UNITED STATES, Appellee

v.

Audrey M. POPE, Airman First Class
U.S. Air Force, Appellant

No. 10-0447

Crim. App. No. S31578

United States Court of Appeals for the Armed Forces

Argued November 9, 2010

Decided January 31, 2011

RYAN, J., delivered the opinion of the Court, in which
EFFRON, C.J., and BAKER and ERDMANN, JJ., joined.  STUCKY,
J., filed a separate opinion concurring in the result.


Counsel

For Appellant:  Captain Andrew J. Unsicker (argued); Major
Darrin K. Johns (on brief); Major Shannon A. Bennett.

For Appellee:  Major Nicole P. Wishart (argued); Captain
Naomi N. Porterfield and Gerald R. Bruce, Esq. (on brief);
Colonel Don M. Christensen and Lieutenant Colonel Jeremy S.
Weber.


Military Judge:  William M. Burd


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Pope, No. 10-0447/AF

Judge RYAN delivered the opinion of the Court.

Contrary to Appellant's pleas, a panel of officers sitting as a special court-martial convicted her of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2006). The panel sentenced Appellant to a bad-conduct discharge, confinement for three months, forfeiture of $450 of pay per month for three months, and reduction to E-1. The findings and sentence were approved by the convening authority and affirmed by the United States Air Force Court of Criminal Appeals. United States v. Pope, No. ACM S31578, 2010 CCA LEXIS 152, at *20, 2010 WL 4068930, at *7 (A.F. Ct. Crim. App. Mar. 8, 2010) (unpublished).

We granted review of four issues in this case:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY ADMITTING A GREEN DETOXIFICATION DRINK UNDER THE DOCTRINE OF SIMILAR PHYSICAL EVIDENCE.

WHETHER THE MILITARY JUDGE COMMITTED PLAIN ERROR WHEN HE FAILED TO GIVE A LIMITING INSTRUCTION THAT AN EXHIBIT WAS BEING ENTERED INTO EVIDENCE FOR ILLUSTRATIVE PURPOSES ONLY.

WHETHER IT WAS PLAIN ERROR FOR THE MILITARY JUDGE TO ALLOW TRIAL COUNSEL TO ELICIT TESTIMONY ON APPELLANT'S RIGHT TO REMAIN SILENT AND TO ALLOW TRIAL COUNSEL TO COMMENT ON THIS DURING HIS FINDINGS ARGUMENT.

WHETHER THE CONTESTED FINDINGS AND SENTENCE IN THE PRESENT CASE SHOULD BE SET ASIDE UNDER THE CUMULATIVE ERROR DOCTRINE.

2

United States v. Pope, 69 M.J. 178 (C.A.A.F. 2010) (order granting review).  We agree with Appellant that it was an abuse of discretion to admit the "green detoxification drink" as demonstrative evidence.  We further hold that it was error -- but not prejudicial plain error -- to fail to give a limiting instruction.  Given the overwhelming evidence of Appellant's guilt, however, we are convinced that these errors had no substantial impact on the verdict, and thus did not materially prejudice Appellant's substantial rights.  See Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006).  Finding no other error, the findings and sentence are affirmed.

## I.  FACTS

The charged specification stemmed from Appellant's positive urinalysis result in a random drug test.  Appellant reported to the drug testing center on March 24, 2008 at 3:09 pm.  Appellant "appeared nervous" at the site.  She stayed until about 4:30 pm but failed to produce a sample in a quantity sufficient for testing.  Appellant was instructed to return the next morning at 6:30 am to provide a specimen, but she did not report back to the testing center until 2:39 pm on March 25, 2008.  According to testimony by Government witnesses who worked at the site, this time Appellant "was really antsy because she had to go

really, really, really bad" and she produced a sample almost immediately, signing out at 2:46 pm. That sample subsequently tested positive for cocaine at nearly ten times the Department of Defense cutoff level.

Appellant stipulated to the following facts: (1) the urine specimen tested was Appellant's urine, (2) the urine specimen "was properly handled and processed" by the drug testing laboratory, and (3) the test results "accurately reported the presence of the cocaine metabolite Benzoylecgonine" in Appellant's urine sample. The only issue at trial was whether Appellant's cocaine usage was knowing and therefore "wrongful." Article 112a, UCMJ.

Appellant's roommate at the time of the urinalysis, Airman First Class Krystal Elaine Sweeney, testified that Appellant admitted that she had "gotten messed up" with her brother, a former drug dealer who bought Appellant "green drinks" that "cost around $50.00" to "clean out [her] system" when "she would get messed up." Each drink consisted of a green liquid in a clear glass bottle with no label. Sweeney testified that she saw bottles of these green drinks in their shared refrigerator -- and saw Appellant drink them -- "[a] few times. . . . maybe three or four times" during the three-to-four-month period they were roommates. However, Sweeney and Appellant did not

4

become roommates until March 24, 2008 -- the date Appellant first reported to the drug testing center. Sweeney testified that she did not remember seeing any green drinks on that day; she could not recall the first time she saw such a bottle. Trial counsel conceded to the military judge that Sweeney did not see Appellant with a green drink prior to her urinalysis.

Immediately before Sweeney's testimony, trial counsel requested an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2006), session. The Government sought to introduce a representative example of a green detoxification drink -- purchased by a Government investigator -- as a prop or replica under the doctrine of similar physical evidence. Trial counsel specifically noted that "the court members would be instructed that the evidence is not actually connected with the case, but is being admitted for illustrative purposes only." Defense counsel objected on relevance, noting that "there is no tie to my client with regard to that bottle" and that Appellant's roommate did not see Appellant with any such drink prior to her urinalysis. The military judge overruled the objection and admitted the green detoxification drink. When asked if the bottle appeared to be "substantially the same type of bottle, the same type of liquid" that she saw in

5

Appellant's possession, Sweeney responded in the affirmative, with the exception that the exhibit had a label indicating it was a detoxification drink whereas Appellant's bottles did not.  The members were never instructed that this bottle was for demonstrative purposes only.

The Government also introduced expert testimony that delay, consuming large volumes of water, and drinking detoxification agents can cause "the concentration [of the cocaine metabolite] to decrease over time."

## II.  DISCUSSION

This Court will not reverse a conviction for an error of law unless that error materially prejudiced an accused's substantial rights.  Article 59(a), UCMJ; United States v. Powell, 49 M.J. 460, 465 (C.A.A.F. 1998).  We review de novo whether the Government has met its burden of establishing that the error did not have a substantial influence on the findings in the context of the entire case.  United States v. Yammine, 69 M.J. 70, 78 (C.A.A.F. 2010).

## A.

Appellant alleges that there were two errors related to the demonstrative evidence:  (1) the military judge abused his discretion in admitting it; and (2) it was error

for the military judge to fail to give a limiting instruction on the use of the demonstrative evidence. We agree.

1.

Demonstrative evidence -- also called illustrative evidence -- "illustrates or clarifies the testimony of a witness." United States v. Heatherly, 21 M.J. 113, 115 n.2 (C.M.A. 1985). Demonstrative evidence is admitted solely to help witnesses explain their testimony. Carson v. Polley, 689 F.2d 562, 579 (5th Cir. 1982). "[I]f the evidence is used to prove a complex, central, or difficult to understand point, [then] it may have a place in the court-martial." Stephen A. Saltzburg et al., Military Rules of Evidence Manual § 403.02[9], at 4-33 (6th ed. 2006).

However, "[d]emonstrative exhibits are inadmissible where they do not illustrate or make clearer some issue in the case; that is, where they are irrelevant, or where the exhibit's character is such that its probative value is substantially outweighed by the danger of unfair prejudice." Benzel v. Keller Indus., Inc., 567 N.W.2d 552, 558 (Neb. 1997); see also United States v. Aldaco, 201 F.3d 979, 986 (7th Cir. 2000); Tritek Techs., Inc. v. United States, 67 Fed. Cl. 727, 729-30 (Fed. Cl. 2005).

7

United States v. Pope, No. 10-0447/AF

"The decision to permit or deny the use of demonstrative evidence generally has been held to be within the sound discretion of the trial judge." Heatherly, 21 M.J. at 115 n.2. Thus, this Court has found no abuse of discretion under Military Rule of Evidence (M.R.E.) 403 when the challenged demonstrative evidence was "relevant, highly probative of critical issues, and not unfairly prejudicial." United States v. White, 23 M.J. 84, 88 (C.M.A. 1986).

But there are several problems with the demonstrative evidence in this case.[1] First, there was no evidence that

---

[1] We agree that admissible underlying testimony is a necessary predicate for the introduction of otherwise relevant and material demonstrative evidence. United States v. Pope, __ M.J. __ (2) (C.A.A.F. 2011) (Stucky, J., concurring in the result). This does not change our view, consistent with case law from other jurisdictions, that admission of the demonstrative evidence in this case was an abuse of discretion under the facts of this case for the reasons identified in this opinion. See, e.g., Aldaco, 201 F.3d at 986 (applying the Fed. R. Evid. 403 balancing test to determine that the probative value of a replica shotgun outweighed the prejudice to a criminal defendant); Finley v. Marathon Oil Co., 75 F.3d 1225, 1231 (7th Cir. 1996) (noting that judges should require "firm foundations" because demonstrative evidence can be "in some cases too powerful" a form of evidence, as it can lead a jury "to resolve its doubts on the basis of a simple, tangible, visible, everyday object of reassuring familiarity") (citations omitted); Tritek Techs., 67 Fed. Cl. at 729-30 (noting that for demonstrative evidence to be admitted, it must comply with the Federal Rules of Evidence, including relevance and the Fed. R. Evid. 403 balancing test); Overstreet v. State, 877 N.E.2d 144, 168 (Ind. 2007) ("To be admissible, [demonstrative] evidence must be

Appellant consumed detoxification drinks <u>before</u> learning she had tested positive for cocaine on the urinalysis test underlying the charged offense.  Thus, the drinks had minimal to no probative value with respect to the only material issue in the case -- whether Appellant's drug usage was knowing and therefore wrongful.

Second, the demonstrative evidence was not helpful; the members could have easily comprehended Sweeney's testimony about the green detoxification drinks without the aid of a physical example purchased by the Government.  <u>See</u> <u>Benzel</u>, 567 N.W.2d at 557-58.  A bottle is neither complex nor difficult for a member to envision; thus, the purported replica was not sufficiently explanatory or illustrative of Sweeney's testimony to either outweigh its potential prejudicial effect or be of help to the members in determining a fact at issue.  <u>See</u> <u>Overstreet</u>, 877 N.E.2d at 168; Saltzburg et al., <u>supra</u>, at 4-33.

Third, the bottle purchased by the Government and introduced as a Government exhibit had a label identifying

---

sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact."); <u>Benzel</u>, 567 N.W.2d at 559-60 (allowing the use of exemplar ladders as demonstrative exhibits because they "aided in clarifying certain issues" in the case and "were more probative than prejudicial").

the drink as a detoxification drink that can "[c]leanse the [b]ody" and eliminate toxins.  In contrast, the bottles seen by Sweeney in Appellant's possession had no labels at all.  Thus, the Government exhibit was <u>not</u> in fact a replica, demonstrative of the bottles allegedly seen by Sweeney in Appellant's possession.

Fourth, the demonstrative evidence fails the M.R.E. 403 balancing test.  See <u>White</u>, 23 M.J. at 88.  While we afford substantial discretion to a military judge's evidentiary rulings, where, as here, an objection invokes the M.R.E. 403 balancing test but the military judge fails to conduct the test on the record, less deference is due. <u>United States v. Collier</u>, 67 M.J. 347, 353 (C.A.A.F. 2009); <u>see</u> <u>also</u> <u>United States v. Lebovitz</u>, 669 F.2d 894, 901 (3d Cir. 1982).

Relevant evidence may be excluded when its probative value is "substantially outweighed by the danger of unfair prejudice . . . or misleading the members."  M.R.E. 403. Given that the demonstrative evidence in this case was not relevant, had minimal to no probative value, and was not even an accurate representation of the bottles described by Sweeney, it was an abuse of discretion for the military judge to admit it.  See <u>United States v. Perry</u>, 37 M.J. 363, 364-65 (C.M.A. 1993).

However, we are convinced that the use of the green bottle as a demonstrative exhibit had no substantial impact on the findings. The offense of wrongful use of cocaine has two elements: (1) that the accused used cocaine; and (2) that the use by the accused was wrongful. Manual for Courts-Martial, United States pt. IV, para. 37.b(2) (2008 ed.) (MCM). Because Appellant stipulated to the validity of the positive urinalysis test, only the second element -- wrongfulness -- was contested at trial. Cocaine usage is not wrongful if the usage occurs "without knowledge of the contraband nature of the substance." MCM pt. IV, para. 37.c(5)(C). Drug use "may be inferred to be wrongful in the absence of evidence to the contrary." MCM pt. IV, para. 37.c(5). In this case, the defense did not produce any evidence showing that Appellant's use of cocaine was without knowledge, and thus not wrongful.

Moreover, the Government presented evidence of Appellant's admission to Sweeney that she had "messed up." The Government also presented circumstantial evidence of Appellant's consciousness of guilt, including: her nervous behavior at the testing site, her initial failure to provide a sufficient sample, and her eight-hour delay in reporting to the drug testing center the following day.

2.

Whether a jury was properly instructed is a question of law reviewed de novo. United States v. Schroder, 65 M.J. 49, 54 (C.A.A.F. 2007). Failure to object to an instruction given or omitted waives the objection absent plain error. Rule for Courts-Martial (R.C.M.) 920(f). "The plain error standard is met when: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." United States v. Maynard, 66 M.J. 242, 244 (C.A.A.F. 2008) (citation and quotation marks omitted).

When demonstrative evidence is admitted, the military judge is required to properly instruct the members that the evidence is for illustrative purposes only. David A. Schlueter et al., Military Evidentiary Foundations § 4-13[4] (3d ed. 2007); see also Finley, 75 F.3d at 1231 ("The trial judge must make sure that the jury is not misled concerning the actual meaning of the object in the context of the litigation."). Here, the military judge failed to give such an instruction. However, because the error did not materially prejudice Appellant's rights, it does not constitute prejudicial plain error. Maynard, 66 M.J. at 244.

In this case, there is little danger that the members would have confused the demonstrative evidence for actual evidence. Testimony clearly established that the green detoxification drink was bought by the Government as a representative example of the types of drinks that Appellant allegedly possessed. When the drink was admitted into evidence, an Air Force investigator testified that she bought the drink at a store on "direction from legal to . . . see if there was an item that pretty much matched up to this description . . . and this was the closest that I found." On cross-examination, defense counsel's questioning clarified that the investigator (1) had bought the bottle at a store, and (2) never went to Appellant's room to see if she possessed similar bottles. Under these circumstances, the members would not have mistaken the demonstrative evidence for substantive evidence. Furthermore, given the overwhelming evidence of Appellant's guilt, we are convinced that the absence of a limiting instruction had no substantial effect on the verdict.

B.

Whether there has been improper reference to an accused's invocation of her constitutional right to remain silent -- in testimony or argument -- is a question of law that this Court reviews de novo. United States v. Moran,

13

65 M.J. 178, 181 (C.A.A.F. 2007). Where, as here, there are no objections at trial, this Court reviews for plain error. United States v. Paige, 67 M.J. 442, 449 (C.A.A.F. 2009).

Trial counsel elicited testimony that Pope was "lackadaisical" and "didn't care" when informed of her positive drug test. On direct examination, trial counsel asked the Air Force investigator, "what was [Appellant's] reaction?" to being told of her urinalysis results. The investigator replied, "[v]ery lackadaisical, no response whatsoever, just sat there as if she didn't care." On redirect, trial counsel revisited this line of inquiry. When the investigator stated that "[a]gain, she acted as though she didn't care," trial counsel asked, "[w]hat was her demeanor like?" The investigator responded, "[v]ery lackadaisical. I wouldn't say she didn't act surprised, but I would just say maybe she just didn't care."

In closing argument, trial counsel referenced this testimony: "You heard [the investigator] say that [Appellant] actually appeared lackadaisical. It didn't seem to faze her when she was notified that she tested positive for cocaine because she had used cocaine. She wasn't surprised that she had tested positive for cocaine."

14

United States v. Pope, No. 10-0447/AF

On the one hand, it is constitutional error to admit evidence of -- or comment on in argument -- an accused's post-apprehension silence as evidence of guilt. United States v. Alameda, 57 M.J. 190, 198-99 (C.A.A.F. 2002); M.R.E. 301(f)(3). On the other hand, nontestimonial demeanor evidence does not trigger Fifth Amendment protections. Pennsylvania v. Muniz, 496 U.S. 582, 591-92 (1990); United States v. Cook, 48 M.J. 64, 66 (C.A.A.F. 1998). Because the comments at issue could be viewed as either nontestimonial demeanor evidence or as implicating Appellant's right to remain silent, it is not "plain, or clear, or obvious" that they were comments on Appellant's constitutional right to remain silent. See Paige, 67 M.J. at 449 (citation and quotation marks omitted). While a closer question, it is also not obvious that the comments violated M.R.E. 304(h)(3) (stating that "[a] person's failure to deny an accusation of wrongdoing concerning an offense for which at the time of the alleged failure the person was under official investigation or was in confinement, arrest, or custody does not support an inference of an admission of the truth of the accusation").

But even if the comments constituted either constitutional or evidentiary error, any such error was not prejudicial under either a constitutional or

nonconstitutional standard.  The three statements at issue
were minor comments in the context of the entire trial and
argument.  See Moran, 65 M.J. at 187-88.  The Government
presented overwhelming evidence of Appellant's guilt,
including the uncontested urinalysis results, her admission
to Sweeney, and Appellant's suspicious behavior at the
testing site.  Appellant's theory of defense was unclear
and, therefore, not strong.  For these reasons, we are
convinced that the testimony and argument at issue were not
factors in obtaining Appellant's conviction.

C.

The cumulative effect of all plain errors and
preserved errors is reviewed de novo.  Cf. United States v.
Gray, 51 M.J. 1, 61 (C.A.A.F. 1999).  Under the cumulative-
error doctrine, "a number of errors, no one perhaps
sufficient to merit reversal, in combination necessitate
the disapproval of a finding."  United States v. Banks, 36
M.J. 150, 170-71 (C.M.A. 1992) (citation and quotation
marks omitted).  This Court will reverse only if it finds
the cumulative errors denied Appellant a fair trial.  Id.
at 171.

In this case, there was overwhelming evidence of
Appellant's guilt, and neither of the errors related to the
demonstrative evidence materially prejudiced Appellant's

substantial rights.  Under these circumstances, Appellant was not denied a fair trial.  See United States v. Dollente, 45 M.J. 234, 242 (C.A.A.F. 1996) ("[C]ourts are far less likely to find cumulative error . . . when a record contains overwhelming evidence of a defendant's guilt.").

### III.  DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Pope, No. 10-0447/AF

STUCKY, Judge (concurring in the result):

I concur in affirming the judgment of the United States Air Force Court of Criminal Appeals (CCA) but write separately because (1) I disagree with the majority's analysis of Issue I -- whether the military judge abused his discretion by admitting a bottle as demonstrative evidence -- and (2) I believe Issue III -- whether it was plain error to allow trial counsel to elicit testimony regarding and comment on Appellant's right to remain silent -- warrants some additional discussion.

I.

On March 24, 2008, Appellant was ordered to provide a sample for a random urinalysis. She reported, but the sample she provided was of insufficient quantity and she was directed to report again on the following day, March 25. Rather than doing so at 6:30 a.m. as directed, Appellant reported at 2:39 p.m. The sample Appellant provided on March 25 tested positive for cocaine metabolites.

Airman First Class (A1C) Sweeney was assigned to the Security Forces technical training school in the same training squadron as Appellant. On March 24, 2008, A1C Sweeney began training and was assigned to room with Appellant. They would be roommates for the next three to four months.

Appellant told A1C Sweeney that, "when she would get messed up, that her brother bought these drinks, these green drinks." Appellant said these drinks "clean out your system for a few days." Appellant kept some of these drinks in the refrigerator. A1C Sweeney testified that Appellant told her that, prior to testing positive, Appellant had gone out with her brother and "gotten messed up" or "messed up."

The testimony in the record provided that Appellant had the drinks in her possession or would acquire them from her brother, used them when she "messed up," and that she "messed up" before providing the sample in question. While A1C Sweeney testified that she did not remember seeing green bottles in the refrigerator on March 24, and she could not remember whether she had seen Appellant drink one before Appellant provided the March 25, 2008, sample, there was enough evidence for the panel to infer that she had. I believe this determination was a question of fact and, as such, was for the panel to decide.

More importantly, because the bottle is demonstrative -- not substantive or real -- evidence, if the underlying testimony is admissible, the basis for the bottle's admission for illustrative purposes has been formed. See United States v. Humphrey, 279 F.3d 372, 376-77 (6th Cir. 2002) (upholding the admission of 107 coin bags as demonstrative evidence used to show what a large number of coin bags looks like); United States

v. McIntosh, 23 F.3d 1454, 1456 (8th Cir. 1994) (upholding the admission of a firearm as demonstrative evidence when it was used to illustrate the testimony of a witness that the witness had seen the defendant carry a similar firearm); United States v. Golden, 671 F.2d 369, 371-72 (10th Cir. 1982) (upholding the admission of a flashlight as demonstrative evidence when a witness testified that a similar flashlight was involved in the case).

A1C Sweeney did not see a label on the green drinks Appellant acquired and occasionally used.  But A1C Sweeney was able to provide detail as to the nature of the drink Appellant used and a description of the bottles from which she drank. They looked like "little banded milk bottles," that were not square-shaped.  They had "green twist cap[s]," and contained green liquid that was "apple-flavored," as A1C Sweeney experienced when Appellant "broke the seal in front of [her]" and offered her a drink.  Appellant told A1C Sweeney the drinks were meant to "clean out your system" and "detox you."  They cost around fifty dollars.

Having followed up on this description, Investigator West was able to locate a product that was "right on target with the description of the taste, the colors, everything."  Trial counsel showed this bottle to A1C Sweeney, and A1C Sweeney testified that it looked "just the same minus the label."

3

Trial counsel sought to introduce a bottle of ProTox Xtreme Strength as demonstrative evidence.  As this Court's predecessor explained, there is a "distinction . . . between the admissibility of substantive evidence and that which is used solely for demonstrative purposes."  United States v. Heatherly, 21 M.J. 113, 115 (C.M.A. 1985).  Demonstrative evidence is, by definition, used to illustrate testimony rather than to "prove or disprove a fact in issue."  Id. at 115 n.2; see also Triteck Techs., Inc. v. United States, 67 Fed. Cl. 727, 733-34 (Fed. Cl. 2005); 2 McCormick on Evidence §§ 212-14 (6th ed. 2006).

The majority correctly states that "'[t]he decision to permit or deny the use of demonstrative evidence generally has been held to be within the sound discretion of the trial judge,'" Heatherly, 21 M.J. at 115 n.2, but appears to apply a tougher standard here.  United States v. Pope, __ M.J. __ (8) (C.A.A.F. 2011).  I do not believe testimony must be "complex" or "difficult . . . to envision," in order for demonstrative evidence to "be of help to the members in determining a fact at issue."  Id. at ___ (9).  Demonstrative evidence is not rendered inadmissible merely because a court believes the trier of fact could have understood the testimony without a prop.[1]  See, e.g.,

_____

[1] I note that this is not the only piece of demonstrative evidence introduced in Appellant's case.  The Government was also permitted to introduce a "sample collection cup," of the type that would have been used to collect the specimen.  This

4

United States v. Aldaco, 201 F.3d 979, 986 (7th Cir. 2000) (upholding the admissibility of a shotgun as demonstrative evidence and listing cases).

I would hold that, because the bottle illustrated the testimony of A1C Sweeney and Investigator West, the military judge did not abuse his discretion in admitting it as demonstrative evidence.  If I had been the military judge in this case, I probably would not have allowed the label in.  But the label was not unduly prejudicial.  It was not overtly incriminating and only provided that the drink's purpose was cleansing and detoxification of the system.  A1C Sweeney testified that this was the exact purpose for which Appellant used the green drinks.  The testimony also repeatedly made clear to the panel that the bottles A1C Sweeney had seen in Appellant's possession did not have labels on them, so the members would not have been confused.  On the basis of this testimony, and because I disagree with the majority's conclusion that "the drinks had minimal to no probative value," Pope, __ M.J. at ___ (10), I do not believe the bottle fails the Military

---

cup was used to illustrate the testimony of Staff Sergeant Williams, a urinalysis observer.  I cannot see why the panel needed to see a sample cup, but I would not say the military judge abused his discretion by allowing it in.

Rule of Evidence (M.R.E.) 403 balancing test.  Under the circumstances, I cannot say admission of the bottle constituted an abuse of discretion.

## II.

I agree with the majority that it is only nontestimonial evidence of demeanor that "does not trigger Fifth Amendment protections."  Pope, ___ M.J. at ___ (15).  I write separately because I believe Appellant's response to being confronted with evidence of her guilt was testimonial and therefore protected under the Fifth Amendment and M.R.E. 304(h)(3) ("A person's failure to deny an accusation of wrongdoing . . . does not support an inference of an admission of the truth of the accusation.").  To me, the question is whether the fair response doctrine, an exception to the Fifth Amendment protection, applies to permit the testimony or comment.

Defense counsel, in an Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2006), session, expressed her intent to present evidence on Appellant's state of mind after being confronted to lay the foundation for an excited utterance, under the mistaken impression that Appellant had been handcuffed on the way to the Security Forces building.  The military judge determined that the admissibility of this

evidence would be determined in an Article 39(a), UCMJ, session rather than in the presence of the members. The follow-up Article 39(a) session never occurred.

After the conclusion of the Article 39(a) session, on direct examination before the court-martial panel, the trial counsel elicited testimony from Investigator West regarding Appellant's "reaction" to and "demeanor" when being confronted with evidence of her guilt by a law enforcement officer. Investigator West testified that, after being informed that her sample had come back positive for cocaine, Appellant was "[v]ery lackadaisical," and did not respond.

During cross-examination, defense counsel asked Investigator West whether Appellant had been handcuffed on the way to the Security Forces building. Upon hearing that she had not, defense counsel apparently abandoned any attempt to lay the foundation for an excited utterance. As a result, defense counsel rested the defense case without inquiring into Appellant's state of mind when being confronted with evidence of her guilt.

During closing arguments, trial counsel argued that the panel should "consider the surrounding circumstances when . . . thinking about [Appellant's] knowledge [that she wrongfully ingested cocaine]," and continued on to remind the panel that "[s]he wasn't surprised that she had tested positive for

cocaine," that "[i]t didn't seem to faze her . . . because she had used cocaine." By commenting on Appellant's failure to respond, trial counsel was asking the members to infer guilt on the basis that an innocent person would have denied the accusation.

Trial counsel may not do this if the accused has not opened the door under a limited exception such as the fair response doctrine. See United States v. Robinson, 485 U.S. 25, 32-34 (1988); Doyle v. Ohio, 426 U.S. 610, 617-19 (1976); Griffin v. California, 380 U.S. 609, 612-14 (1965); United States v. Moran, 65 M.J. 178, 181-82 (C.A.A.F. 2007); United States v. Alameda, 57 M.J. 190, 198-99 (C.A.A.F. 2002); United States v. Cook, 48 M.J. 236, 240 (C.A.A.F. 1998); United States v. Toro, 37 M.J. 313, 318 (C.M.A. 1993); United States v. Fitzpatrick, 14 M.J. 394, 398-99 (C.M.A. 1983); see also United States v. Velarde-Gomez, 269 F.3d 1023, 1028-29 (9th Cir. 2001); United States v. Rivera, 944 F.2d 1563, 1568-69 (11th Cir. 1991).

Had defense counsel actually inquired into Appellant's state of mind during the trial, trial counsel could have been permitted under the fair response doctrine to make a limited inquiry into her state of mind to counter a defense claim that she was in an excited state. But defense counsel, having discovered that Appellant had not been handcuffed, abandoned this idea and did not open the door.

Moreover, trial counsel belied this purpose by later arguing that Appellant's lack of response went to her consciousness of guilt.  However, I agree with the majority that the comments were harmless beyond a reasonable doubt.