STUCKY, Judge
(concurring in the result):
I concur in affirming the judgment of the United States Air Force Court of Criminal Appeals (CCA) but write separately because (1) I disagree with the majority’s analysis of Issue I — whether the military judge abused his discretion by admitting a bottle as demonstrative evidence — and (2) I believe Issue III — whether it was plain error to allow trial counsel to elicit testimony regarding and comment on Appellant’s right to remain silent — warrants some additional discussion.
I.
On March 24, 2008, Appellant was ordered to provide a sample for a random urinalysis. She reported, but the sample she provided was of insufficient quantity and she was directed to report again on the following day, March 25. Rather than doing so at 6:30 a.m. as directed, Appellant reported at 2:39 p.m. The sample Appellant provided on March 25 tested positive for cocaine metabolites.
Airman First Class (A1C) Sweeney was assigned to the Security Forces technical training school in the same training squadron as Appellant. On March 24, 2008, A1C Sweeney began training and was assigned to room with Appellant. They would be roommates for the next three to four months.
Appellant told A1C Sweeney that, “when she would get messed up, that her brother bought these drinks, these green drinks.” Appellant said these drinks “clean out your system for a few days.” Appellant kept some of these drinks in the refrigerator. A1C Sweeney testified that Appellant told her that, prior to testing positive, Appellant had gone out with her brother and “gotten messed up” or “messed up.”
The testimony in the record provided that Appellant had the drinks in her possession or would acquire them from her brother, used them when she “messed up,” and that she “messed up” before providing the sample in question. While A1C Sweeney testified that she did not remember seeing green bottles in the refrigerator on March 24, and she could not remember whether she had seen Appellant drink one before Appellant provided the March 25, 2008, sample, there was enough evidence for the panel to infer that she had. I believe this determination was a question of fact and, as such, was for the panel to decide.
More importantly, because the bottle is demonstrative — not substantive or real — evidence, if the underlying testimony is admissible, the basis for the bottle’s admission for illustrative purposes has been formed. See United States v. Humphrey, 279 F.3d 372, 376-77 (6th Cir.2002) (upholding the admission of 107 coin bags as demonstrative evidence used to show what a large number of coin bags looks like); United States v. McIntosh, 23 F.3d 1454, 1456 (8th Cir.1994) (upholding the admission of a firearm as demonstrative evidence when it was used *336 to illustrate the testimony of a witness that the witness had seen the defendant carry a similar firearm); United States v. Golden, 671 F.2d 369, 371-72 (10th Cir.1982) (upholding the admission of a flashlight as demonstrative evidence when a witness testified that a similar flashlight was involved in the case).
A1C Sweeney did not see a label on the green drinks Appellant acquired and occasionally used. But A1C Sweeney was able to provide detail as to the nature of the drink Appellant used and a description of the bottles from which she drank. They looked like “little banded milk bottles,” that were not square-shaped. They had “green twist cap[s],” and contained green liquid that was “apple-flavored,” as A1C Sweeney experienced when Appellant “broke the seal in front of [her]” and offered her a drink. Appellant told A1C Sweeney the drinks were meant to “clean out your system” and “detox you.” They cost around fifty dollars.
Having followed up on this description, Investigator West was able to locate a product that was “right on target with the description of the taste, the colors, everything.” Trial counsel showed this bottle to A1C Sweeney, and A1C Sweeney testified that it looked “just the same minus the label.”
Trial counsel sought to introduce a bottle of ProTox Xtreme Strength as demonstrative evidence. As this Court’s predecessor explained, there is a “distinction ... between the admissibility of substantive evidence and that which is used solely for demonstrative purposes.” United States v. Heatherly, 21 M.J. 113, 115 (C.M.A.1985). Demonstrative evidence is, by definition, used to illustrate testimony rather than to “prove or disprove a fact in issue.” Id. at 115 n. 2; see also Tritek Techs., Inc. v. United States, 67 Fed.Cl. 727, 733-34 (Fed.Cl.2005); 2 McCormick on Evidence §§ 212-14 (6th ed.2006).
The majority correctly states that “ ‘[t]he decision to permit or deny the use of demonstrative evidence generally has been held to be within the sound discretion of the trial judge,’ ” Heatherly, 21 M.J. at 115 n. 2, but appears to apply a tougher standard here. United States v. Pope, 69 M.J. at 332 (C.A.A.F.2011). I do not believe testimony must be “complex” or “difficult ... to envision,” in order for demonstrative evidence to “be of help to the members in determining a fact at issue.” Id. at 333. Demonstrative evidence is not rendered inadmissible merely because a court believes the trier of fact could have understood the testimony without a prop.[1] See, e.g., United States v. Aldaco, 201 F.3d 979, 986 (7th Cir.2000) (upholding the admissibility of a shotgun as demonstrative evidence and listing cases).
I would hold that, because the bottle illustrated the testimony of A1C Sweeney and Investigator West, the military judge did not abuse his discretion in admitting it as demonstrative evidence. If I had been the military judge in this case, I probably would not have allowed the label in. But the label was not unduly prejudicial. It was not overtly incriminating and only provided that the drink’s purpose was cleansing and detoxification of the system. A1C Sweeney testified that this was the exact purpose for which Appellant used the green drinks. The testimony also repeatedly made clear to the panel that the bottles A1C Sweeney had seen in Appellant’s possession did not have labels on them, so the members would not have been confused. On the basis of this testimony, and because I disagree with the majority’s conclusion that “the drinks had minimal to no probative value,” Pope, 69 M.J. at 333, I do not believe the bottle fails the Military Rule of Evidence (M.R.E.) 403 balancing test. Under the circumstances, I cannot say admission of the bottle constituted an abuse of discretion.
II.
I agree with the majority that it is only nontestimonial evidence of demeanor that “does not trigger Fifth Amendment protee- *337 tions.” Pope, 69 M.J. at 334. I write separately because I believe Appellant’s response to being confronted with evidence of her guilt was testimonial and therefore protected under the Fifth Amendment and M.R.E. 304(h)(3) (“A person’s failure to deny an accusation of wrongdoing ... does not support an inference of an admission of the truth of the accusation.”). To me, the question is whether the fair response doctrine, an exception to the Fifth Amendment protection, applies to permit the testimony or comment.
Defense counsel, in an Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2006), session, expressed her intent to present evidence on Appellant’s state of mind after being confronted to lay the foundation for an excited utterance, under the mistaken impression that Appellant had been handcuffed on the way to the Security Forces building. The military judge determined that the admissibility of this evidence would be determined in an Article 39(a), UCMJ, session rather than in the presence of the members. The follow-up Article 39(a) session never occurred.
After the conclusion of the Article 39(a) session, on direct examination before the court-martial panel, the trial counsel elicited testimony from Investigator West regarding Appellant’s “reaction” to and “demeanor” when being confronted with evidence of her guilt by a law enforcement officer. Investigator West testified that, after being informed that her sample had come back positive for cocaine, Appellant was “[v]ery lackadaisical,” and did not respond.
During cross-examination, defense counsel asked Investigator West whether Appellant had been handcuffed on the way to the Security Forces building. Upon hearing that she had not, defense counsel apparently abandoned any attempt to lay the foundation for an excited utterance. As a result, defense counsel rested the defense case without inquiring into Appellant’s state of mind when being confronted with evidence of her guilt.
During closing arguments, trial counsel argued that the panel should “consider the surrounding circumstances when ... thinking about [Appellant’s] knowledge [that she wrongfully ingested cocaine],” and continued on to remind the panel that “[s]he wasn’t surprised that she had tested positive for cocaine,” that “[i]t didn’t seem to faze her ... because she had used cocaine.” By commenting on Appellant’s failure to respond, trial counsel was asking the members to infer guilt on the basis that an innocent person would have denied the accusation.
Trial counsel may not do this if the accused has not opened the door under a limited exception such as the fair response doctrine. See United States v. Robinson, 485 U.S. 25, 32-34, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988); Doyle v. Ohio, 426 U.S. 610, 617-19, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); Griffin v. California, 380 U.S. 609, 612-14, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); United States v. Moran, 65 M.J. 178, 181-82 (C.A.A.F.2007); United States v. Alameda, 57 M.J. 190, 198-99 (C.A.A.F.2002); United States v. Cook, 48 M.J. 236, 240 (C.A.A.F.1998); United States v. Toro, 37 M.J. 313, 318 (C.M.A.1993); United States v. Fitzpatrick, 14 M.J. 394, 398-99 (C.M.A.1983); see also United States v. Velarde-Gomez, 269 F.3d 1023, 1028-29 (9th Cir.2001); United States v. Rivera, 944 F.2d 1563, 1568-69 (11th Cir.1991).
Had defense counsel actually inquired into Appellant’s state of mind during the trial, trial counsel could have been permitted under the fair response doctrine to make a limited inquiry into her state of mind to counter a defense claim that she was in an excited state. But defense counsel, having discovered that Appellant had not been handcuffed, abandoned this idea and did not open the door.
Moreover, trial counsel belied this purpose by later arguing that Appellant’s lack of response went to her consciousness of guilt. However, I agree with the majority that the comments were harmless beyond a reasonable doubt.

. I note that this is not the only piece of demonstrative evidence introduced in Appellant’s case. The Government was also permitted to introduce a "sample collection cup,” of the type that would have been used to collect the specimen. This cup was used to illustrate the testimony of Staff Sergeant Williams, a urinalysis observer. I cannot see why the panel needed to see a sample cup, but I would not say the military judge abused his discretion by allowing it in.