# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, K.J. BRUBAKER, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**LEE R. SYKES**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201400144**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 5 December 2013.
**Military Judge:** LtCol Leon Francis, USMC.
**Convening Authority:** Commanding General, 1st Marine Logistics Group, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation:** Capt A. Chapman III, USMC.
**For Appellant:** LT Jonathan Hawkins, JAGC, USN.
**For Appellee:** Maj Suzanne Dempsey, USMC; LCDR Keith Lofland, JAGC, USN.

**30 April 2015**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A special court-martial consisting of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification each of violating a lawful general regulation by committing fraternization and adultery in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 92 and 134. The appellant was sentenced to reduction to pay grade

E-1 and a bad-conduct discharge.  The convening authority (CA) approved the sentence as adjudged and, except for the bad-conduct discharge, ordered it executed.

The appellant now alleges three assignments of error (AOE): 1) the trial counsel's sentencing argument was improper; 2) the charges against him were unreasonably multiplied;[1] and 3) the military judge erred by describing the appellant's invocation of his constitutional right not to testify as a "failure" in his findings instructions to the members.

After careful consideration of the record of trial and the parties' pleadings, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Factual Summary

The appellant, a married man, and Sergeant (Sgt) AG, a married woman, worked together in Combat Logistics Regiment (CLR) 17, Communications Company.[2]  While their interactions initially were professional, their relationship evolved into a romantic and sexual one.  When Sgt AG first joined CLR 17, the appellant was not in her chain of command,[3] but at some point after their sexual relationship had begun, Sgt AG reported directly to the appellant.[4]

The appellant and Sgt AG first began communicating through text messages, discussing personal and professional matters.[5] They met for the first time outside of work behind the Field Company barracks in the appellant's car to avoid being seen together.[6]  A short time after that, the appellant invited Sgt AG over to his home, where they had dinner, drank, and eventually

---

[1] Having reviewed the record, we find this assignment of error raised by the appellant to be without merit.  *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

[2] Sgt AG was discharged from the Marine Corps in January 2013.

[3] Record at 168.

[4] *Id.* at 209.

[5] *Id.* at 169.

[6] *Id.* at 170.

had sexual intercourse.[7]  For several months afterwards, they continued to have sexual intercourse, and Sgt AG would spend the night at the appellant's apartment two or three nights a week.[8] Following the Marine Corps Ball, the appellant and Sgt AG spent the night together in a hotel.[9]  Shortly afterwards, they mutually decided to end their relationship.

Further facts relevant to the AOEs are developed below.

## Improper Argument

The appellant's first AOE argues that the trial counsel's sentencing argument was improper in that it invited the members to consider the misconduct between the appellant and Sgt AG as evidence of his failure to "learn his lesson" from his earlier court-martial conviction and nonjudicial punishment (NJP), despite the fact that the alleged misconduct for which he was on trial occurred over a year prior to those two events.

### Background

From April 2011 to July 2013 the appellant engaged in four separate instances of misconduct for which he was either disciplined or counseled.  The earliest alleged misconduct involved the appellant and Sgt AG and spanned from April to November 2011.[10]  From November 2011 to March 2012, the appellant fraternized with another female Marine, Lance Corporal (LCpl) AC.[11]  In October 2012, charges were preferred against the appellant alleging that he fraternized with LCpl AC.[12]  Then, in January 2013, the appellant was counseled by his commanding officer for failing to perform at the level of staff noncommissioned officer (NCO) for signing a urinalysis testing register "XOXOXO."[13]  In March 2013, charges were preferred

---

[7] *Id.* at 172.

[8] *Id.* at 173-74, 207, 214.

[9] *Id.* at 186-87.

[10] *Id.* at170, 191.

[11] Prosecution Exhibit 11 at 3.

[12] Appellate Exhibit XXIII at 1.

[13] PE 10 at 4.

3

against the appellant for his relationship with Sgt AG.[14] At that time, the appellant already had charges referred to a special court-martial relating to alleged fraternization with another Marine in his unit – LCpl AC. In May 2013, the appellant was tried and found guilty by a special court-martial of fraternizing with LCpl AC and sentenced to reduction in pay grade to E-5 and a written reprimand.[15] A month later, the CA referred the charges against the appellant for his misconduct with Sgt AG to a special court-martial.[16] In July 2013, before the appellant's second court-martial began, the appellant received NJP for disrespecting a superior commissioned officer.[17]

Finally, in December 2013, the appellant's special-court martial in the instant case began. During presentencing arguments, trial counsel argued that the appellant had not "learn[ed] his lesson" from his misconduct in the instant case, the previous special court-martial, and NJP.[18] Specifically, trial counsel stated:

> Now, the accused's actions after the misconduct occurred, and after his previous court-martial indicate that he didn't get rehabilitated last time, he didn't learn his lesson. . . . In January of this year, prior to this first court-martial but over a year after the misconduct occurred, he gets negative paperwork for a petty action, something you wouldn't expect of a staff noncommissioned officer.

> And then in July, two months after he was convicted in his prior court-martial, he was reduced, he was reprimanded, and he gets NJPed. An NJP for disrespect towards a superior commissioned officer. Now, these are not the actions of somebody who learned their lesson, accepted responsibility, and moved forward.

---

[14] The charges involving Sgt AG stemmed from an interview that the trial counsel had with Sgt AG that took place around the third week of March, 2013. The interview was conducted in preparation for the special court-martial of another Marine implicated as a co-conspirator in the appellant's first court-martial. Record at 51.

[15] PE 11 at 3-4.

[16] Charge Sheet.

[17] PE 10 at 6-7.

[18] Record at 429-30.

> [H]im moving forward . . . didn't happen last time.  The reduction and the reprimand weren't enough, but rehabilitation needs to occur, and it's going to take something more serious.[19]

The appellant's trial defense counsel did not object to trial counsel's closing argument.

### *Law*

We review allegations of improper argument raised for the first time on appeal for plain error.  *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005).  To show plain error, the appellant "has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the [appellant]."  *United States v. Tunstall*, 72 M.J. 191, 193-94 (C.A.A.F. 2013) (citation and internal quotation marks omitted).  The plain error doctrine is "to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result."  *United States v. Causey*, 37 M.J. 308, 311 (C.M.A. 1993) (citations and internal quotations omitted).

Trial counsel may not "unduly . . . inflame the passions or prejudices of the court members."  *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011) (citations and internal quotation marks omitted).  Argument must be limited to the "'evidence of record, as well as all reasonable inferences fairly derived from such evidence.'"  *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)).  "Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be 'confident that [the appellant] was sentenced on the basis of the evidence alone.'"  *Id.* (quoting *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (brackets in original)).

### Analysis

We find that the appellant has failed to show that there was plain or obvious error in the trial counsel's presentencing argument.  However, assuming *arguendo* that trial counsel's presentencing argument was improper, we find that the appellant has failed to demonstrate that any error was materially

---

[19] *Id.*

prejudicial to a substantial right.  For several reasons, we find that trial counsel's argument was not so damaging that we cannot be "confident that the appellant was sentenced on the basis of the evidence alone." *Frey*, 73 M.J. at 248 (citation and internal punctuation omitted).

First, the minimal impact of trial counsel's argument is measured, in part, by the lack of defense objection to the argument. *See United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (finding lack of a defense objection is some measure of the minimal impact of a trial counsel's improper comment).  While trial counsel's argument may have been an inapt summation of evidence that failed to accurately depict the chronology of events, any confusion was cured by defense counsel's subsequent argument, which clarified the timeline of the appellant's misconduct.[20]  Additionally, the members had in their possession during sentencing deliberations Prosecution Exhibit 10, which stated the dates of the appellant's alleged misconduct for which he was convicted at his prior special court-martial, the NJP, and his written counseling for failing to perform at the level of a staff NCO.

Second, we find that trial counsel's reference to the appellant's conduct and punishment after the misconduct in this case was not materially prejudicial.  The appellant's prior special court-martial, counseling, and NJP were properly admitted into evidence.  Thus, even without any indication by trial counsel, the members would have been aware of the appellant's subsequent misconduct through the appellant's personnel file and unsworn statement.

Third, the theme of the trial counsel's argument that the appellant was not being rehabilitated was a reasonable inference: the appellant committed the misconduct at issue in this case, then he committed further fraternization for which he was tried at his previous court-martial.  While charges were pending against him, he committed further misconduct by acting

---

[20] ". . . this is his second court-martial, there's a prior conviction for fraternization.  And the trial counsel would have you believe that that means that this Marine is not being rehabilitated.  He's flagrantly breaking the law again and again, and again.  But if you look more closely at those dates, look at the time alleged in the misconduct, the facts that you've had before you took place between April and November of 2011, over 2 years ago.  The facts that were adjudged at the last court-martial took place between November 2011 and March of 2012.  So how can it be said that the accused, after his trial in May of 2013, flagrantly went back to break the law when all of the facts in this court-martial and that court-martial took place in 2011 and early 2012."  Record at 433.

outside of the expected conduct of a staff NCO.  In between the two courts-martial, he received NJP for this misconduct.  "[A] person's rehabilitative potential is based upon his entire character, morality, and determination to succeed.  In forming an opinion about rehabilitative potential, knowledge of a person's success or failure in previous efforts to recover is extremely helpful."  *United States v. Wilson*, 31 M.J. 91, 94 (C.M.A. 1990) (citation omitted).  Thus, "the fact that the accused has failed to recover [in the past] is an extremely important and rational basis upon which to form a conclusion." *Id.* (citation omitted).  In this case, the appellant's disciplinary record does not indicate, as the appellant stated during his unsworn statement, a commitment "[s]ince [his] first court-martial—even before [his] first court-martial . . . to trying to make up for the mistakes" that he has made.[21]  In fact, his conduct prior to and after his first court-martial indicates the opposite.

Finally, "we will consider in determining the appropriateness of the sentence, the sentence adjudged by itself and in conjunction with the sentence of his first . . . court-martial."  *United States v. Rascoe*, 31 M.J. 544, 563 n.21 (N.M.C.M.R. 1990).  In doing so we find that the sentence adjudged at this court-martial was appropriate.  While "traditional military practice favor[s trying] an accused for all known charges at the same court-martial," it is not required, and we find no evidence of unreasonable or vexatious Government conduct.  *Id.*  Furthermore, the military judge found the defense originally objected to such joinder.[22]

Though the members in this case adjudged the sentence requested by trial counsel, both counsel requested reduction to E-1 and only differed in that trial counsel requested a bad-conduct discharge (BCD) and defense counsel requested a reprimand.[23]  Trial counsel's sentencing request was substantially less than the maximum punishment allowed for fraternization and adultery.  Additionally, a BCD was appropriate in this case because, standing alone, the appellant's ongoing fraternization and adultery with his subordinate for approximately eight months would warrant such a punishment.  Considered in conjunction with the sentence of the appellant's first court-martial, where he was reduced to E-5 and

---

[21] Record at 417.

[22] *Id.* at 69; *see also id.* at 31-32.

[23] *Id.* at 432, 437.

reprimanded, a BCD is "appropriate for an accused who has been convicted repeatedly of minor offenses and whose punitive separation appears to be necessary[.]"  RULE FOR COURTS-MARTIAL 1003(b)(8)(C), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

### Improper Reference to the Appellant's "Failure" To Testify

In the appellant's third AOE, he claims that the military judge's reference to his invocation of his right to remain silent as a "failure" was improper and contributed to his conviction.

#### *Background*

Before deliberation on findings, the military judge instructed the members as to how they may consider the appellant's "failure" to testify.[24]  Nearly verbatim from the Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9 at ¶ 7-12 (01 Jan 2010), the military judge stated: "The accused's failure to testify.  The accused has an absolute right to remain silent.  You will not draw any inference adverse to the accused from the fact that he did not testify as a witness.  The fact that the accused has not testified must be disregarded by you."[25]  There was no objection to these instructions.[26]

#### *Law*

The question of whether a jury was properly instructed is a question of law and is reviewed *de novo*. *United States v. Pope*, 69 M.J. 328, 333 (C.A.A.F. 2011).  Counsel's failure to "object to an instruction . . . before the members close to deliberate constitutes waiver of the objection in the absence of plain error."  R.C.M. 920(f).  To show plain error, the appellant has the burden of demonstrating: "(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the [appellant]."  *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011) (citation and footnote omitted).  An error is not materially prejudicial if it was not a factor in obtaining the appellant's conviction.  *See Pope*, 69 M.J. at 334-35.

---

[24] Record at 347.

[25] *Id.*

[26] *Id.* at 351.

8

If the appellant shows a constitutional error, the burden shifts to the Government to show the error was harmless beyond a reasonable doubt. *United States v. Brewer*, 61 M.J. 425, 432 (C.A.A.F. 2005).

A challenged instruction is not reviewed in isolation; rather, it is reviewed within the context of the entire record of trial and set of instructions. *See United States v. Simpson*, 56 M.J. 462, 466 (C.A.A.F. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) and *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). *Cf. Francis v. Franklin*, 471 U.S. 307, 319-20 (1985) (general instructions as to the Government's burden and the accused's presumption of innocence do not dissipate errors made in specific instructions that seem to shift the burden to the defense). Finally, we presume the members understood and followed a military judge's instruction in the absence of evidence to the contrary. *United States v. Holt*, 33 M.J. 400, 408 (C.M.A. 1991).

### *Analysis*

Here, we find that the military judge did not plainly err in referring to the appellant's "failure to testify" while instructing the members prior to findings. The military judge instructed the members using a commonly-used "standard" instruction that,[27] taken as a whole, clearly and correctly indicated to the panel that the appellant's absolute right to remain silent could not be used against him.[28] The appellant cites no case law supporting the argument that the "[i]nclusion of the word 'failure' in the context of the accused not testifying is clearly an improper comment . . . ."[29]

---

[27] This court has referred to the instruction as a "failure to testify" instruction. *United States v. Forbes*, 59 M.J. 934, 936 (N.M.Ct.Crim.App. 2004), *aff'd,* 61 M.J. 354 (C.A.A.F. 2005). The United States Court of Appeals for the Armed Forces has stated that "[n]ot every prosecutorial comment on the *failure* of an accused to testify is impermissible." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (emphasis added).

[28] During *voir dire*, the members indicated that they would be able to follow the following instruction: "You may expect or desire the accused to testify. The accused has an absolute right not to testify. The fact that an accused may elect not to testify in his own behalf may not be considered adverse to the accused in any way." Record at 90.

[29] Appellant's Brief of 7 Aug 2014 at 28.

As the appellant states, the word "failure" can be defined as "omission of expected . . . action."[30]  Contrary to the appellant's argument, the inclusion of the word "failure" does not necessarily mean that the accused had a duty to testify and did not.  Rather, we interpret "failure to testify" in this context to mean simply that the appellant did not testify.

Even assuming *arguendo* that the instruction was error, it was immediately cured by the military judge, who instructed that "[t]he accused has an absolute right to remain silent" and no adverse inference may be drawn from the fact that the accused did not testify.[31]  There were no other references at trial to the appellant's decision not to testify.  When the military judge asked the members if they had any questions regarding the instructions, they indicated that they did not.[32]  Since there is no evidence to the contrary, we presume that the members understood and followed the military judge's instructions.  *See Holt*, 33 M.J. at 408.  Finally, the evidence presented at trial overwhelming supported the appellant's guilt on both charges.

Accordingly, we hold that if there was error, it was not a factor in obtaining the appellant's conviction and was harmless beyond a reasonable doubt.  *See Pope*, 69 M.J. at 334-35; *Brewer*, 61 M.J. at 432.

## Conclusion

Accordingly, the findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

---

[30] *Id.* at 27 (citation omitted).

[31] Record at 347.  The military judge also instructed the members to "disregard any comment or statement or expressions made by me during the course of the trial that might seem to indicate any opinion, on my part, as to whether the accused is guilty or not guilty . . . ."  *Id.* at 350.

[32] *Id.* at 351.