**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Major MICHAEL J. MELLOTT**
**United States Air Force**

**ACM 38776**

**5 May 2016**

Sentence adjudged 21 November 2014 by GCM convened at Dyess Air Force
Base, Texas. Military Judge: Tiffany M. Wagner.

Approved sentence: Dismissal and a fine of $10,000.

Appellate Counsel for Appellant: Major Jeffrey A. Davis.

Appellate Counsel for the United States: Major Mary Ellen Payne; Captain
J. Ronald Steelman III; and Gerald R. Bruce, Esquire.

Before

ALLRED, TELLER, and SANTORO
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent
under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

Contrary to his pleas, Appellant was convicted by officer members of larceny of at
least $10,700 in violation of Article 121, UCMJ, 10 U.S.C. § 921.[1] The adjudged and
approved sentence was a dismissal and fine of $10,000. Appellant argues that the evidence
was legally and factually insufficient to support his conviction, trial counsel made an

---

[1] The finding of guilt was made by exceptions and substitutions. Appellant was initially charged with stealing $17,000
cash and $40,000 in casino chips. He was acquitted of making a false statement with respect to how much money was
involved in this case.

improper findings argument, and his sentence is inappropriately severe. We disagree and affirm.

*Background*

Mr. EL, a frequent high-stakes gambler, was attending a charity golf tournament at a Las Vegas casino on 11 April 2014. While at the casino, Mr. EL entered a restroom and had with him a bank pouch that he testified had at least $17,000 in cash, approximately $40,000 in casino chips, his keys, and copies of checks and other documents. While in the restroom, Mr. EL received a telephone call and put the pouch down to take the call. After completing the call and concluding his stop, Mr. EL left the restroom but forgot to pick up the bank bag.

About 10 to 15 minutes later, Mr. EL realized that he had left the pouch in the restroom. He immediately contacted casino personnel who returned to the restroom but were unable to locate it. Mr. EL made a report of the loss and casino staff began an investigation, which included review of the casino's surveillance videos.

The surveillance videos enabled the staff to identify a man coming out of the same restroom who appeared to have hidden a similar-looking pouch in his shorts. That man quickly left the casino and sprinted across the street, almost being hit by traffic. Security personnel found video of that same person eating at a casino restaurant earlier in the day and through credit card receipts identified him as Appellant.

Casino executives, working with security personnel from other casinos, were able to obtain Appellant's contact information from the casino in which he had been registered. Mr. WW, head of the casino's crisis management department and a retired FBI special agent, called Appellant the following day to give him the opportunity to return the pouch. When Mr. WW identified himself, Appellant denied having taken the bag. However, after Mr. WW told Appellant that he had him on videotape, Appellant said, "I know what I did, just get to the point. What do you want?"

In the ensuing conversation, Appellant admitted that he took a bag from a sink in the restroom but that the bag only contained keys and checks or deposit slips. He said, "I freaked out because I knew I did something I shouldn't have done and I just threw the bag in the trash." Mr. WW asked about the location of the trash in which Appellant threw the bag; after some back-and-forth, Appellant said he had thrown the bag away at the casino at which he was staying. Appellant was told that the victim was willing not to pursue criminal charges if the pouch was returned but he continued to insist that there was no money in the bag. Appellant told Mr. WW that he (Appellant) couldn't talk because he was at a little league game. Mr. WW called Appellant several times thereafter but he did not answer his phone.

ACM 38776

Casino personnel learned that Appellant was in the Air Force and reported the incident to the Air Force Office of Special Investigations (AFOSI). As the Air Force investigation ensued, Appellant made contradictory statements to various military members about what had occurred in Las Vegas. For example, he told a member of security forces with whom he played softball that he had been receiving harassing telephone calls from people in Las Vegas about an empty envelope he had found in a restroom. He told his commander that he felt like he "won the lottery" when he came across some money in Las Vegas, but he left it in the hotel room. When he spoke to AFOSI agents minutes after making that statement to his commander, Appellant gave them a Ziploc bag containing $10,700 in $100 bills and told them that was the money that was in the pouch he found in the restroom in Las Vegas. Appellant insisted that was the entire amount in the pouch when he found it.

Additional facts necessary to resolve the assignments of error are included below.

*Legal and Factual Sufficiency*

Appellant argues that the evidence is legally and factually insufficient to sustain his conviction. He contends the money he found was "lost property" and, because he did not know the owner's identity, he could not be convicted of larceny for not attempting to return the property.

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001); *see also United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of [Appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. The term reasonable doubt, however, does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The law of larceny treats lost and mislaid property differently. "Property is 'mislaid' when the owner voluntarily and intentionally leaves or puts the property in a certain place for a temporary purpose and then forgets where it was left or inadvertently leaves it behind." *United States v. Meeks*, 32 M.J. 1033, 1035–36 (A.F.C.M.R. 1991). Property is lost when the "owner has involuntarily parted with it because of negligence, carelessness, or some other involuntary reason." *Id*.

The military judge instructed the members on the distinction between mislaid and lost property. Her instruction was legally correct and its soundness is not challenged on appeal. She told the members:

> One who finds lost property is not guilty of larceny unless he takes possession of the property with both the intent permanently to deprive the owner of its use and benefit or permanently to appropriate the property to his own use, or the use of someone other than the owner, and has a clue as to the identity of the owner.
>
> A clue as to identity of the owner may be provided by the character, location, or marking of the property, or by other circumstances. The clue must provide a reasonably immediate means of knowing or ascertaining the owner of the property.
>
> . . . A person who finds mislaid property has no right to take possession of it, other than for the purpose of accomplishing its return to the owner.

Appellant urges us to conclude that the property was lost rather than mislaid. We disagree. Mr. EL set the pouch down temporarily to free his hands to receive a telephone call. He testified that he never intended to leave the bag in the restroom. His immediate report, once he realized he had not picked up the bag, is consistent with this conclusion.

We have considered the evidence in the light most favorable to the prosecution. We have also made allowances for not having personally observed the witnesses. Having paid particular attention to the matters raised by Appellant, we find the evidence legally sufficient to support his conviction for larceny. Moreover we are convinced of his guilt beyond a reasonable doubt.

*Findings Argument*

Appellant's attacks on trial counsel's findings argument are two-fold. First, he argues that trial counsel erred when arguing that when Appellant first found the money, he

had several "right" or "legal" options he could have pursued. Second, he challenges trial counsel's summary of the evidence and the argument with respect to the theories of lost and mislaid property.

Whether argument is improper is a question of law we review de novo. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citing *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011)). Because trial defense counsel failed to object to portions of the argument, we review those instances for plain error. *Id.* To establish plain error, Appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007).

"[T]rial counsel is at liberty to strike hard, but not foul, blows." *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Trial counsel is limited to arguing the evidence in the record and the inferences fairly derived from that evidence. *See United States v. Paxton*, 64 M.J. 484, 488 (C.A.A.F. 2007); *United States v. White*, 36 M.J. 306, 308 (C.M.A. 1993). Whether or not the comments are fair must be resolved when viewed within the entire court-martial. *United States v. Gilley*, 56 M.J. 113, 121 (C.A.A.F. 2001).

Trial counsel argued:

> And [when Appellant found the bag], he had multiple options as to what he could do. He could: one, find out who the true owner of that money was and get the money back. He could: two, return that money to the casino cashier's cage. He could: three, report that money to security.
>
> All of those things would have been the right thing to do and the legal thing to do. And any normal person, especially an officer in the United States Air Force, would be expected to do those right things—

Whereupon the military judge overruled a defense objection concerning what was "legal" or "right." Defense counsel did not object to the reference to Appellant's status as an officer.

As noted above, Appellant's legal obligations differed if the property was lost versus mislaid. In the context of trial counsel's argument, addressing the facts as Appellant would have perceived them at the time he found the money, we discern no error. However, the reference to Appellant's status as an officer, without any lawful basis on these facts to impose upon him a greater legal duty, is a much closer call. As there was no objection to

this portion of the argument, even assuming error we discern no material prejudice to Appellant in the context of the overall argument.

Appellant's remaining challenges to trial counsel's argument revolve around his view that the pouch was lost property. Appellant takes issue not only with trial counsel's summary of the evidence but also the legal conclusions that should be drawn therefrom. We have reviewed the entirety of the argument and discern no error, plain or otherwise. Appellant's disagreement with the prosecution's theory of the case does not constitute error and, in those situations in which trial counsel did paraphrase or relate the military judge's instructions to the facts of this case, we find that those arguments were consistent with the evidence and inferences that could be derived therefrom and did not misstate the principles of law applicable to those facts.

*Sentence Appropriateness*

Appellant alleges that a dismissal is inappropriately severe for the offense of which he was convicted. We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006); *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ. We assess sentence appropriateness by considering Appellant, the nature and seriousness of the offense, Appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007).

While we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988). The maximum imposable sentence was forfeiture of all pay and allowances, confinement for 5 years, and dismissal from the service. The approved sentence of a dismissal and a fine of $10,000 was clearly within the discretion of the convening authority.

Appellant argues that the victim's initial willingness not to prosecute had the money been returned immediately is a factor that should mitigate the severity of the offense. We disagree. Appellant's efforts to obfuscate his actions and avoid responsibility—even in light of the victim's offer—aggravate his offense and call into question his rehabilitative potential. We are also unpersuaded that a fine is inappropriate for this financial crime because the fine will not be paid to the victim of the offense.

We have given individualized consideration to this Appellant, his conduct, his military career and accomplishments, and the other relevant matters within the record of

trial. Appellant stole over $10,000. Even after being confronted, he repeatedly tried to avoid returning the money to its rightful owner by making inconsistent and contradictory statements about the circumstances of the offense and the amount of money he stole. We therefore conclude that the approved sentence is not inappropriately severe.

*Conclusion*

The findings are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).[2] Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

---

[2] The court-martial order (CMO) erroneously states that findings as to Charge II (larceny) were made by exceptions and substitutions. It is the specification, not the charge, for which excepted and substituted findings were made. We order the completion of a corrected CMO.