*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
HACKEL, KISOR, and BLOSSER
Appellate Military Judges

―――――――――――――

**UNITED STATES**
*Appellee*

**v.**

**Daniel K. CHEGE**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 202200079**

―――――――――――――

Decided: 13 October 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Derek Poteet

Sentence adjudged 8 December 2021 by a general court-martial convened at Marine Corps Air Station Miramar, California, consisting of officer and enlisted members. Sentence in the Entry of Judgment: reduction to E-1, confinement for two years, forfeiture of all pay and allowances, and a dishonorable discharge.

For Appellant:
*Lieutenant Christopher B. Dempsey, JAGC, USN*

For Appellee:
*Lieutenant Colonel James A. Burkart, USMC*
*Lieutenant Gregory A. Rustico, JAGC, USN*

Senior Judge HACKEL delivered the opinion of the Court, in which Senior Judge KISOR and Judge BLOSSER joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

HACKEL, Senior Judge:

A panel of officer and enlisted members convicted Appellant, contrary to his pleas, of two specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice [UCMJ],[1] for penetrating the vulva of Lance Corporal [LCpl] Jane[2] with his penis and his hand without her consent.

Appellant asserts seven assignments of error [AOEs]: (1) the military judge abused his discretion by excluding evidence that the victim made a false accusation of sexual assault against another Marine after reporting the allegation against Appellant; (2) the military judge abused his discretion by denying the Defense requests for production, continuance, and abatement based on newly discovered evidence that the victim had tampered with a defense witness; (3) the military judge erred by preventing the Defense from arguing that the victim tampered with a defense witness; (4) the military judge erred by not instructing the members on a mistake of fact defense; (5) the aforementioned cumulative errors denied Appellant a fair trial; (6) the evidence is not legally and factually sufficient to support Appellant's conviction; and (7) Appellant's trial defense counsel was ineffective for not seeking credit for time Appellant spent in civilian pretrial confinement.[3] We find no prejudicial error and affirm.

_____

[1] 10 U.S.C. § 920.

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[3] On 15 May 2023, Appellant filed a motion for expedited review of his seventh AOE. Appellant asserted, and the Government conceded, that Appellant was entitled to two days of pretrial confinement credit for time spent in civilian custody. On 16 May 2023, this Court ordered that Appellant be credited with two days of confinement credit and that the United States certify that its order had been complied with. On 31 May 2023, the United States certified that Appellant received two days of pretrial confinement credit and was released from confinement on 27 May 2023. As Appellant has

## I. BACKGROUND

Appellant became familiar with LCpl Jane in May of 2019 after she first arrived at Marine Corps Air Station Miramar, California, where Appellant served as her supervisor. This was her first duty station. Appellant and LCpl Jane began to socialize, occasionally getting food and spending time together outside of work. Between May and June 2019, LCpl Jane and Appellant kissed on four occasions. On 4 July 2019, LCpl Jane and Appellant attended a party at a fellow Marine's home in San Diego where they both consumed alcohol. LCpl Jane testified that this was the second time she had consumed more than one drink in a party setting. LCpl Jane recalled feeling "slightly tipsy" but "not really drunk."[4]

LCpl Jane testified that during the party, she and Appellant did not interact, kiss, or flirt with each other. She recalled that, at one point during a group conversation, Appellant leaned forward to speak to another person and put his hand on LCpl Jane's thigh. She testified that this made her feel uncomfortable. That night, LCpl Jane decided to sleep at the house where the party had taken place. She slept on one side of an L-shaped sofa and Appellant slept on the other side. In addition to LCpl Jane and Appellant, there were two other people asleep in the same room. LCpl Jane testified that she slept wearing a t-shirt, jean shorts, and underwear.

LCpl Jane testified that after she had lain down and closed her eyes to sleep, she heard Appellant whisper her name and begin to shake her. She did not respond to Appellant and testified that she believed Appellant would "leave [her] alone" if she continued to ignore him.[5] Appellant moved LCpl Jane's shorts and underwear to the side and then penetrated her vagina with his fingers. LCpl Jane testified that she continued to pretend to be asleep and that she "disconnected from the situation. [She] froze."[6] Appellant then removed his fingers and repositioned LCpl Jane to her side, moving her midsection closer to the edge of the couch before getting behind her and penetrating her vagina with his penis. LCpl Jane testified she continued to not react and still felt "frozen."[7] After some time—characterized by LCpl Jane as "not long"—Appellant

---

already received confinement credit, his seventh AOE has been resolved and is, therefore, moot. *See United States v. Dedolph*, No. 202100150, 2022 CCA LEXIS 658, at *30 (N-M Ct. Crim. App. Nov. 15, 2022).

[4] R. at 696.

[5] R. at 701.

[6] R. at 702.

[7] R. at 704.

left the room and went into the kitchen. He then returned to the sofa, positioned himself behind LCpl Jane, and penetrated her vagina with his fingers again. LCpl Jane testified at this point that she still felt frozen and had not reacted or indicated that she was awake. Appellant then penetrated her vagina with his penis for a second time. LCpl Jane testified that Appellant then pulled her onto his lap and tried to kiss her. LCpl Jane stated that she did not kiss him back or react and kept her body limp. Appellant then put her back on her side of the couch and went to sleep.

At trial, LCpl Jane testified that she did not consent to any of Appellant's sexual acts. She explained that she did not try to get help from the other people sleeping in the room because she knew they were asleep and unaware of what was happening. She also stated that she felt "completely dead . . . [she] wasn't feeling anything or thinking anything."[8] LCpl Jane did not recall speaking with Appellant the next morning.

The following month, in August 2019, LCpl Jane engaged in consensual sex with Appellant after consuming alcohol with him in his barracks room. During trial, LCpl Jane explained that having sex with Appellant "gave [her] . . . a sense of empowerment"[9] and "control of [her] own feelings."[10] She also testified that having sex at that time "allowed [her] to feel the feelings that [she'd] been suppressing"[11] since the incident in July 2019. Afterwards, she felt "awful…[l]ike really, really upset."[12] She got dressed, left Appellant's barracks room, and called her friend, Corporal [Cpl] Golf. Understanding that LCpl Jane was upset, Cpl Golf drove to meet her outside of the barracks building and spoke with her. He testified that LCpl Jane stated Appellant had just sexually assaulted her. At trial, Cpl Golf distinguished her description of the August sexual encounter with the subject of the instant court-martial, which occurred in July. LCpl Jane provided conflicting testimony, stating that that she did not tell Cpl Golf that the sex with Appellant in August was an assault or nonconsensual, and that Cpl Golf was confused or misremembered their discussion.

---

[8] R. at 705.

[9] R. at 779.

[10] R. at 784.

[11] R. at 779.

[12] R. at 779.

LCpl Jane reported the sexual assault to law enforcement in February 2020. As part of law enforcement's investigation, LCpl Jane conducted a pretext phone call with Appellant. During the call, LCpl Jane confronted Appellant about having sex with her while she was asleep in July 2019. Appellant stated that he "didn't have any self-control in that moment."[13] Appellant also stated that he "barely" penetrated her vagina with his penis.[14] Appellant acknowledged that he "did what he did knowing" that LCpl Jane did not consent. He concluded that the "fault is on me . . . if I could take it back, I would because there's no way I should have done that."[15]

Nearly one month later, law enforcement interviewed Appellant about the alleged sexual assault. When given an opportunity to tell his side of the story, Appellant made a number of additional incriminating statements. He admitted that he tried to "wake her up," and "talk to her;"[16] that he "forced [him]self upon her in a way that – you know, [he] was trying to have sex with her;"[17] and that he put his hand inside her shorts and was "feeling her vagina with [his] hand."[18] Appellant stated that during the encounter LCpl Jane was "not responding."[19] He also recalled "trying to penetrate" her vagina with his penis though he could not recall whether it happened.[20] He further stated that he tried to hold her to "show some remorse."[21] Appellant admitted "I remember one point just coming to and just realizing, 'My gosh. What am I doing? This is heinous. This is disgusting.'"[22]

Additional facts, including facts related to events during Appellant's court-martial, necessary to resolve specific assignments of error are included in the discussion, infra.

---

[13] Pros. Ex. 4 at 9.

[14] Pros. Ex. 4 at 11.

[15] Pros. Ex. 4 at 9.

[16] Pros. Ex. 5 at 13.

[17] Pros. Ex. 5 at 10.

[18] Pros. Ex. 5 at 13.

[19] Pros. Ex. 5 at 13; 16-17.

[20] Pros. Ex. 5 at 12, 17.

[21] Pros. Ex. 5 at 21.

[22] Pros. Ex. 5 at 10.

## II. DISCUSSION

### A. The Military Judge did not Abuse his Discretion by Excluding Evidence that LCpl Jane made a False Allegation of Sexual Assault

In a pretrial Article 39(a) session, trial defense counsel moved to admit evidence that LCpl Jane had previously made a false sexual assault allegation. The military judge denied the motion.

### 1. Standard of Review and the Law

We review a military judge's decision to admit or exclude evidence, including putting limitations on the scope of cross-examination, for an abuse of discretion.[23] An abuse of discretion occurs when (1) the ruling is predicated on findings of fact clearly unsupported by the evidence; (2) the military judge used incorrect legal principles; (3) the military judge applied correct legal principles to the facts in a way that is clearly unreasonable; or (4) the military judge failed to consider important facts.[24] This standard is highly deferential and recognizes that a judge has a range of choices available and will not be reversed so long as the decision falls within that range.[25] Indeed, the "challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[26]

Military Rule of Evidence [Mil R. Evid.] 412 provides that evidence of a victim's sexual behavior is generally inadmissible. Rule 412(b)(3) creates an exception to that general provision for evidence "the exclusion of which would violate the accused's constitutional rights."[27] Contemplated within Mil. R. Evid. 412(b)(3) is an accused's Sixth Amendment right to confrontation via cross-examination.[28] To establish that exclusion of certain evidence would violate the constitutional rights of an accused, the accused bears the burden of demonstrating "that the evidence is relevant, material, and favorable to his defense, and thus . . . is necessary."[29] "The term 'favorable' is synonymous with

---

[23] *United States v. McElhaney*, 54 M.J. 120, 129 (C.A.A.F. 2000).

[24] *See United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017).

[25] *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004).

[26] *McElhaney*, 54 M.J. at 130.

[27] Mil. R. Evid. 412(b)(3).

[28] *United States v. Erikson*, 76 M.J. 231, 235 (C.A.A.F. 2017).

[29] *United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010).

'vital.'"[30] If evidence is determined to meet the criteria of Mil. R. Evid. 412(b)(3), the military judge must then conduct a Mil. R. Evid. 403 balancing test to determine whether the evidence regarding the alleged victim's sexual behavior outweighs the risk of "unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."[31] When offering evidence of a false allegation of sexual assault under Mil. R. Evid. 412(b)(3), an accused bears the burden of demonstrating that the false allegation was, in fact, both *false* and an *allegation*.[32]

In *Erikson*, the Court of Appeals for the Armed Forces [CAAF] examined whether the military judge erred in excluding evidence that the victim had previously made a false accusation of sexual contact against another Soldier. There, the defense made a pretrial motion to admit evidence that a prior accusation of sexual assault made by the victim in that case was false. The defense argued that the false accusation provided evidence of the victim's modus operandi and "how she accuses other men of assaulting her even when untrue."[33] The military judge convened an Article 39(a), UCMJ, session where he heard evidence, including: (1) a summary court-martial acquittal; (2) a denial by the accused Soldier; (3) testimony from an individual who was present at the time the assault was alleged and denied seeing an assault, and; (4) testimony from the victim denying that the prior accusation was false.[34] The CAAF determined:

> The military judge was in the best position to determine the credibility of these witnesses, and there is no evidence before this Court to suggest that his conclusion that [the victim] was more credible than the prior accused was clearly erroneous.…the military judge was correct in concluding that the summary court-martial acquittal …was not dispositive of the falsity of the allegation. Second, he was correct in concluding that the denial by the prior accused was no more persuasive here than in *McElhaney.* And third, the military judge did not abuse his discretion

---

[30] *Erikson*, 76 M.J. at 235.

[31] Mil. R. Evid. 403.

[32] *See Erikson*, 76 M.J. at 235-36 (citing *McElhaney*, 54 M.J. at 127, 130).

[33] *Erikson*, 76 M.J. at 233.

[34] *Id.* at 236.

> in finding that [the victim] was more credible than the witnesses who testified on behalf of the defense.[35]

Ultimately, the CAAF determined that it was not error to exclude the evidence at trial.[36]

### *2. Additional Facts*

At Appellant's court-martial, the Defense moved to admit several pieces of evidence under Mil. R. Evid. 412, including that LCpl Jane "made a false sexual assault allegation against another Marine."[37] In its motion, the Defense stated that while it was "still investigating and attempting to gather evidence on this issue . . . it will seek to introduce evidence that [LCpl Jane] made a false accusation against another person—namely, Sergeant [[Sgt] Mike]."[38] The military judge held an Article 39(a) session and heard testimony from LCpl Jane and Corporal [Cpl] Foxtrot. Cpl Foxtrot testified about a conversation he had in November or December 2020 with LCpl Jane. Cpl Foxtrot was in a romantic relationship with LCpl Jane during the time when this conversation occurred. He testified that LCpl Jane had told him that she had had sex with Sgt Mike: "I can't remember what she said verbatim, but she did…describe it as nonconsensual. She said that she had no ability—she didn't—she wasn't able to say, 'No.'"[39] Cpl Foxtrot admitted that he could not "remember exactly what was said."[40]

The military judge also questioned Cpl Foxtrot. When asked whether his memory of this conversation with LCpl Jane was "a clear memory or not a clear memory," Cpl Foxtrot replied, "Well, I do remember specifically she—[LCpl Jane] told me it was nonconsensual, and [Sgt Mike] told me that it was consensual."[41]

---

[35] *Id.* at 235.

[36] *Id.* at 236.

[37] App. Ex. XI at 1.

[38] App. Ex. XI at 13.

[39] R. at 208.

[40] R. at 209.

[41] R. at 211-12.

In contrast, LCpl Jane testified that the encounter with Sgt Mike in 2020 was consensual and that she did not ever tell anyone that it was a nonconsensual encounter.[42] She testified that Cpl Foxtrot's recollection was incorrect:

> I told him that it wasn't something that I had wanted, and what I had meant by that was, when it happened, it wasn't, like, planned. It wasn't something that I was thinking about. It was something that just happened. I wasn't telling him that we had – or that, for me, it was nonconsensual.[43]

In his findings, the military judge explained that this evidence was "highly distinguishable" from the charged offense.[44] If offered at trial, the military judge found that it would likely be distracting, noting both that this incident took place "a year and a half after the charged incident," and that it would "require a trial within a trial . . . it would require the members to make a determination between two witnesses."[45] To that end, the military judge identified, based on his observations of the testimony, that the discrepancy in testimony could simply be the result of a misunderstanding, noting that both witnesses "could very well be testifying sincerely as to what they believe happened during that conversation." The military judge also found that counsel may wish to explore Cpl Foxtrot's motivation in testifying "to the extent that [Cpl Foxtrot]'s relationship with [LCpl Jane] apparently is not ongoing," which would be distracting.[46]

Conducting an analysis under Mil. R. Evid. 403, the military judge expressed concern over the relative probative value of the evidence. He concluded that this evidence required "a trial within a trial"[47] and that this type of evidence "appears to the Court to be squarely the type of evidence that [Mil. R. Evid.] 412 is...intended...to exclude."[48] The military judge excluded the evidence regarding LCpl Jane's sexual encounter with Sgt Mike.

---

[42] R. at 223.

[43] R. at 225.

[44] R. at 276.

[45] R. at 277.

[46] R. at 278.

[47] R. at 277.

[48] R. at 278.

*3. Analysis*

We find that the military judge did not abuse his discretion. As a preliminary matter, Appellant "was required to establish the falsity" of LCpl Jane's purported subsequent sexual assault allegation for it to be potentially admissible under Mil. R. Evid. 412.[49] The military judge carefully considered testimony of LCpl Jane and Cpl Foxtrot at an Article 39(a), UCMJ, session and placed his findings orally on the record. The evidence of falsity presented by Appellant was relatively weak, consisting only of Cpl Foxtrot's testimony about his conversation with LCpl Jane wherein he remembered her saying the sexual encounter with Sgt Mike was nonconsensual. In contrast, Cpl Foxtrot also testified that Sgt Mike told him the encounter with LCpl Jane was consensual. LCpl Jane agreed with Sgt Mike that their encounter was consensual and testified she did not make an allegation of sexual assault in her conversation with Cpl Foxtrot. On this evidence, the military judge found "based on the Court's evaluation of [LCpl Jane] and [Cpl Foxtrot's] tone and [LCpl Janes] demeanor and comportment during her testimony . . . that both [Cpl Foxtrot] and [LCpl Jane] could very well be testifying sincerely as to what they believe happened during that conversation, and what was said during that conversation." As the person best suited to make assessments about witness credibility, the military judge is entitled to deference absent clearly erroneous factual determinations. Like in *Erickson*, there is no evidence before this Court to suggest the military judge's finding was clearly erroneous.[50]

It is clear from our review that, having found the proffered "false allegation" lacked credibility, the military judge then properly determined that permitting the Defense to present this theory would waste time and create substantial risk of confusing the members. The proof offered in Appellant's case seems particularly weak when compared with the facts in *Erikson*, where to prove falsity the defense offered "(1) a summary court-martial acquittal; (2) the prior accused's testimony denying the assault; (3) the testimony of a person who was present in the room at the time of the alleged incident and who denied seeing any sexual assault occurred."[51] It is clear that the CAAF recognized, as do we, that the military judge's determination at the trial level respecting the credibility of testimony and the impact of evidence on a trial under the Mil. R. Evid. 403 framework is entitled to great deference. Despite Appellant's take on

---

[49] *Erikson*, 76 M.J. at 236.

[50] *Id.*

[51] *Erikson*, 76 M.J. at 236.

the evidence, an abuse of discretion requires more than a mere difference of opinion.[52]

The military judge did not exhibit an erroneous view of the law, nor was his decision "arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[53] We therefore decline Appellant's invitation to disturb the military judge's ruling.

**B. The Military Judge did not Abuse his Discretion by Denying the Defense Requests for Production, Continuance, and Abatement Related to Allegations of Witness Tampering**

At trial, LCpl Jane allegedly tampered with a witness. The military judge denied trial defense counsel's requests for production of evidence, continuance, and abatement related to the alleged tampering. Before this Court, Appellant argues that it was an abuse of discretion for the military judge to deny the Defense request for production of "Snapchat communications" and to deny the Defense requests for continuance and abatement.[54]

*1. Standard of Review and the Law*

We review a military judge's decision on production of evidence for an abuse of discretion.[55] Similarly, a military judge's ruling on whether to grant an abatement or continuance are reviewed for an abuse of discretion.[56] As discussed above, this is a highly deferential standard that recognizes an abuse of discretion only where: (1) the ruling is predicated on findings of fact clearly unsupported by the evidence; (2) the military judge used incorrect legal principles; (3) the military judge applied correct legal principles to the facts in a way that is clearly unreasonable; or (4) the military judge failed to consider important facts.[57]

---

[52] *See, e.g., United States v. Black*, 82 M.J. 447, 453 (C.A.A.F. 2022).

[53] *Black*, 82 M.J. at 453.

[54] Appellant Brief at 48.

[55] *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004).

[56] *United States v. Simmermacher*, 74 M.J. 196, 199 (C.A.A.F. 2015).

[57] *See Commisso*, 76 M.J. at 321.

With regard to the production of evidence at the trial level, parties are "entitled to the production of evidence which is relevant and necessary."[58] Evidence is relevant if it has any tendency to make a fact more or less probable, and that fact is one of consequence in determining the action.[59] Relevant evidence is necessary when it is "not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue."[60] Movants must also demonstrate that the evidence requested actually exists.[61]

With regard to a request for a continuance, a military judge "should, upon a showing of reasonable cause, grant a continuance to any party for as long and as often as is just."[62] Our superior court identified several non-dispositive factors to assess whether a continuance was appropriate in a given case, including: surprise, the nature of any evidence involved, the timeliness of the request, the length of continuance, prejudice to the opponent, whether the moving party received prior continuances, whether the moving party was acting in good faith, the use of reasonable diligence by the moving party, any possible impact on the verdict, and prior notice.[63]

With regard to abatement, we examine the strictures of Rule for Courts-Martial [R.C.M.] 703(e)(2), which provides that parties are not entitled to evidence which has been "destroyed, lost, or otherwise not subject to compulsory process."[64] The rule establishes three criteria for relief as an exception to that general principle:

> [I]f [(1)] such evidence is of such central importance to an issue that it is essential to a fair trial, and [(2)] if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evi-

---

[58] Rule for Courts-Martial [R.C.M.] 703(e).

[59] Mil. R. Evid. 401.

[60] R.C.M. 703(e) Discussion.

[61] *See United States vs. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004).

[62] R.C.M. 906(b)(1).

[63] *See United States v. Miller*, 47 M.J. 352, 358 (C.A.A.F. 1997).

[64] R.C.M. 703(e)(2).

dence or shall abate the proceedings, unless [(3)] the unavailability of the evidence is the fault of or could have been prevented by the requesting party.[65]

Abatement is an appropriate remedy only if each of the three criteria has been satisfied.[66] The CAAF has noted that military judges have "broad discretion" in determining whether an adequate substitute under factor (2) is available.[67]

### 2. Additional Facts

During his court-martial, Appellant alleged that LCpl Jane tampered with the testimony of LCpl Hotel, who was LCpl Jane's close friend. Notes from a July 2021 pretrial interview with trial defense counsel indicated LCpl Hotel would testify that LCpl Jane told him that she would get a ride from Appellant the morning after the sexual assault.[68] LCpl Hotel did not review the interview notes for accuracy. On the eve of trial, trial defense counsel again interviewed LCpl Hotel, who denied stating that LCpl Jane discussed getting a ride with Appellant.

Appellant had planned to call LCpl Hotel to testify regarding the morning immediately following the sexual assault, but Appellant claimed that LCpl Hotel had changed his story after having conversations with LCpl Jane against the military judge's orders. These conversations, which took place between July and December 2021, formed the basis for Appellant's motion for a dismissal with prejudice. During a subsequent interview with Appellant's counsel the day before trial, LCpl Hotel stated that he did not remember any conversations regarding LCpl Jane getting a ride with Appellant.[69]

On the second day of trial, shortly after the members were impaneled, LCpl Hotel testified during an Article 39(a) session that he did not believe that LCpl Jane ever told him that she was going to get a ride with Appellant. He explained that any reference he might have made to LCpl Jane getting a ride from Appellant was a hypothetical explanation for how she got home following the assault.[70] He testified that he did not discuss his testimony with LCpl Jane nor did they discuss him altering his testimony.

---

[65] *Id.*

[66] *Simmermacher*, 74 M.J. at 201 n.5.

[67] *Id.* at 202.

[68] App. Ex. XLIX at 2.

[69] App. Ex. L.

[70] R. at 586-87.

LCpl Hotel stated that between July and December 2021 he had told LCpl Jane that he was going to be a witness, but he denied providing any details to her. Otherwise, he claimed that they did not discuss the details of the court-martial, aside from LCpl Jane's feelings of stress and anxiety over the legal proceedings.

Another Marine, LCpl Lima, witnessed a conversation between LCpl Hotel and LCpl Jane when LCpl Lima and LCpl Jane dropped off some food for LCpl Hotel the day before trial. LCpl Lima testified at the Article 39(a) session that while he did witness LCpl Hotel and LCpl Jane speaking privately, they had only exchanged greetings and bid each other a good night.

LCpl Jane was present in the courtroom during LCpl Lima's testimony. After hearing the Defense make a request for her communications with LCpl Hotel, LCpl Jane used her phone to block and then unblock LCpl Hotel on Snapchat, which resulted in their conversation history being deleted from her cell phone. Separately, after the conclusion of the Article 39(a) session, LCpl Lima recanted his testimony in an interview with the Defense and admitted that LCpl Jane had actually discussed the case with LCpl Hotel. LCpl Lima stated that he had heard enough details of the case to know that their conversation was about the case. LCpl Lima stated that both LCpl Jane and LCpl Hotel apologized for getting LCpl Lima involved in the case.

When LCpl Hotel and LCpl Lima were recalled to provide further testimony in light of these revelations, they both invoked their right to remain silent.[71] The Defense requested a grant of testimonial immunity for both witnesses to further develop the facts relating to the conversation at issue. The Defense requested that the proceedings be abated until the trial court received an answer on the immunity question from the convening authority. The military judge denied the Defense motion for abatement pending the resolution of the immunity request. The convening authority denied the request on 6 December 2021.[72] The military judge later denied Appellant's motion to dismiss, finding that Appellant failed to carry his burden.

While this litigation was on-going, Appellant initially requested discovery of digital "communications between [LCpl Jane], [LCpl Hotel], and [LCpl

---

[71] R. At 668, 999. Although LCpl Hotel invoked his right to remain silent after being informed that there was an allegation that he gave false testimony. The military judge ruled that Appellant could still call LCpl Hotel to testify about the sexual assault itself. Appellant did not recall LCpl Hotel. R. at 1031-32.

[72] *See* App. Ex. LXV.

Lima]," arguing that there was some circumstantial evidence that there had been witness tampering.[73] Following the Defense interview with LCpl Lima whereby he recanted his earlier testimony, Appellant clarified the discovery request: "we would like discovery on all of their conversations. We're going to send a preservation request to Snapchat . . . my inference is that there is a lot of information that will be found in their communications about this case."[74]

The Government contested the motion, arguing that the Defense presented no evidence of what "occurred in the Snapchats," focusing on the court's admonition to the witnesses "to not discuss *the facts of the case*."[75] Further, the Government argued that issuing a warrant to Snapchat would necessitate a continuance of potentially months, given the proximity to the winter holidays. No evidence was offered by either party regarding whether—and to what extent—Snapchat would still possess the evidence being sought.

The military judge suggested that LCpl Jane allow her Victims' Legal Counsel [VLC] to search her phone for any pertinent messages. In response, the Defense requested a continuance and an abatement until "we have that immunity, where they can take the stand, and until we have that discovery."[76] Further, the Defense argued that a review of LCpl Jane's phone would be insufficient as Snapchat messages were frequently deleted. Further, he clarified that his discovery request was for "everything, including text messages, social media messages, messages through Facebook messenger, Instagram, and Snapchat."[77]

The military judge partially granted Appellant's discovery request to the extent discovery would involve LCpl Jane and her VLC searching her phone for pertinent electronic messages sent during the relevant timeframe with either LCpl Hotel or LCpl Lima. The military judge also stated that he would allow Appellant "robust impeachment" of LCpl Jane.[78] The following day, the Defense became aware that LCpl Jane had blocked LCpl Hotel on Snapchat. Later that day, the Defense informed the military judge that it had also become aware of a text message from LCpl Jane to LCpl Hotel sent the previous day

---

[73] R. at 618.

[74] R. at 655-56.

[75] R. at 676 (emphasis added).

[76] R. at 679.

[77] R. at 680.

[78] R. at 683.

that stated, "I had to block you on Snapchat . . . but I added you back."[79] The Defense proffered that such a course of action had the effect of deleting the conversation history within the Snapchat application.

Pointing to the deletion of Snapchat conversation history as evidence of "an attempt to cover her tracks," trial defense counsel then argued that the Defense would need the previously requested discovery to adequately impeach LCpl Jane.[80] The military judge denied that motion and stated that "the right to robust cross-examination is going to include cross-examining regarding the text message that you mentioned stating, 'I had to block you on Snapchat but I added you back.'"[81] The military judge also found that there were ample grounds for impeachment to discuss LCpl Jane's conversations with LCpl Hotel.

The Defense successfully impeached LCpl Jane on these issues. During her testimony, she stated that it was "a lie" when LCpl Hotel testified that they did not talk about the court-martial when she and LCpl Lima brought him food.[82] She also offered that it was "a lie" when LCpl Hotel stated that he and LCpl Jane never discussed specific details of the court-martial.[83] While LCpl Jane admitted that her conversations with LCpl Hotel were a violation of the military judge's order, she maintained that their conversation was limited to a discussion of a third-party who she was unsure was a witness. She also denied asking LCpl Hotel or LCpl Lima to alter their testimony. LCpl Jane admitted that she blocked and unblocked LCpl Hotel, but claimed that the resulting deletion of their conversation history was unintentional.[84]

Additionally, the Defense inquired about whether LCpl Jane knew that LCpl Hotel would purportedly testify that she told him that she would be getting a ride with Appellant the morning after the sexual assault. LCpl Jane maintained that she did not know any aspects of LCpl Hotel's testimony. LCpl Jane denied asking LCpl Hotel to change his testimony. After the Defense rested its case, Appellant requested a ruling on the request for an abatement of the proceedings for discovery of evidence that would tend to prove the allegations of witness tampering. The military judge denied that request.

---

[79] R. at 685.

[80] R. at 686.

[81] R. at 687.

[82] R. at 1053.

[83] R. at 1053.

[84] R. at 1054-55.

*3. Analysis*

As the moving party, Appellant bore the burden to show, by a preponderance of the evidence, that the Snapchat messages between LCpl Jane and LCpl Hotel existed and, if so, that they were both relevant and necessary. As a threshold matter, we find that Appellant failed to carry his burden. We recognize that LCpl Jane's actions during court would have resulted in Snapchat messages between her and LCpl Hotel being deleted, had any existed at the time. However, Appellant was unable to establish the relevance of any such messages. At an earlier point in the litigation, the military judge inquired about the nature of LCpl Hotel's communications with LCpl Jane:

| MJ: | Okay. And you indicated that you messaged at least once per day with [LCpl Jane], but some days you talked for an hour or two per day – |
|---|---|
| LCpl Hotel: | Yes. |
| MJ: | – is that telephone conversation or is it texting for an hour or two? |
| LCpl Hotel: | I would say both. Sometimes we message – we usually text – is our main way of communicating.[85] |

This interaction is the only one presented on the record that clearly establishes indicia of the means of communication used between LCpl Jane and LCpl Hotel. It is unclear what precisely texting means in this context—whether it be SMS text messages or messages sent through a social media application like Snapchat. Due to the discovery directed by the military judge, the evidence established that LCpl Jane sent a text message to LCpl Hotel stating words to the effect of, "'I had to block you on Snapchat but I added you back.'"[86] This text message is itself probative of the fact that LCpl Jane and LCpl Hotel communicate via text messages. It is also probative of the fact that LCpl Hotel and LCpl Jane may have communicated on Snapchat, though the nature of those communications—whether they be photos or videos or written messages—is unclear.

Finally, the Defense questioned LCpl Jane about the purported deletion:

---

[85] R. at 580-81.

[86] R. at 687.

| Defense Counsel: | So, . . . that last question, by blocking him, it deleted the conversation history? |
|---|---|
| [LCpl Jane]: | Yes. And again, I was unaware that it would delete the history.[87] |

From this interaction, it is clear that the action taken by LCpl Jane deleted the conversation history between her and Appellant. However, it is unclear whether that conversation history contained photos, videos, or written messages. More importantly, it is also unclear whether the conversation history was pertinent to Appellant's court-martial. And trial defense counsel asked LCpl Jane no questions to resolve this ambiguity.

To borrow from trial defense counsel's own statements, it appears from the record that the existence, relevance, and necessity of text messages was merely an "inference" made by the Defense that there was "a lot of information that will be found in their communications about this case."[88] Further, trial defense counsel failed to present evidence that any of the messages, if they existed, sought in the discovery request would be found on Snapchat servers. Consequently, Appellant did not show that the purported communications were relevant and necessary and should have been produced through compulsory process. We therefore hold that the military judge did not abuse his discretion in denying Appellant's motion to compel production.

With regard to Appellant's request for a continuance and abatement, we likewise find that the military judge did not abuse his discretion. A military judge "should, upon a showing of reasonable cause, grant a continuance to any party for as long and as often as is just."[89] Abatement is appropriate where the lost evidence is of central importance to a fair trial, no adequate substitute exists, and the unavailability of the evidence was not the fault of the requesting party.[90] Military judges have "broad discretion" in the determination of whether adequate substitutes exist.[91] Here, we find that the military judge's ruling provided an adequate alternative to an extended discovery process.

As a preliminary matter, we note that the Defense requested the messages for the purpose of impeachment. Insofar as the purported messages are of claimed central importance to a fair trial, the significance of the messages

---

[87] R. at 1054-55.

[88] *See* R. at 655-56.

[89] R.C.M. 906(b)(1).

[90] *See* R.C.M. 703(e)(2).

[91] *Simmermacher*, 74 M.J. at 201 n.5.

would be rooted in their impeachment value. Here, the military judge allowed for limited discovery of the contents of LCpl Jane's phone and allowed the Defense robust cross-examination of LCpl Jane on the matter. Indeed, LCpl Jane admitted through cross-examination before the members that she talked to LCpl Hotel about the trial in violation of the military judge's order and that her actions deleted conversation history with LCpl Hotel.

Not only did the Appellant fail to make the required showing that the evidence necessitating the requested delay existed, but the military judge also provided an adequate substitute for the processes requested by Appellant. The military judge developed a clear record and did not fail to consider any important facts. The military judge's ruling was not based on findings of fact clearly unsupported by the evidence, nor was the military judge's application of legal principles incorrect or unreasonable.[92] We find that the military judge did not abuse his discretion in denying the Defense requests for continuance and abatement. Even assuming that the military judge erred by not granting the requests for continuance and abatement, we find that no error caused material prejudice to the substantial rights of Appellant.

## C. The Military Judge did not Abuse his Discretion by Preventing Appellant from Arguing that LCpl Jane Tampered with a Witness's Testimony

### 1. Standard of Review and the Law

Rulings regarding closing argument are reviewed for an abuse of discretion.[93] The Supreme Court has recognized that a judge in a criminal case "must be and is given great latitude in controlling the duration and limiting the scope of closing."[94] Military judges are afforded deference over what arguments to allow in closing argument because of their responsibility to exercise "reasonable control of the proceedings."[95] The CAAF has held that "[c]losing arguments

---

[92] *See Commisso*, 76 M.J. at 321.

[93] *United States v. Bess*, 75 M.J. 70, 75 (C.A.A.F. 2016).

[94] *United States v. Payne*, No. 200501454, 2009 CCA LEXIS 107, at *11 (N-M Ct. Crim. App. Apr. 7, 2009) (quoting *Herring v. New York*, 422 U.S. 853, 862 (1975)).

[95] R.C.M. 801(a)(3).

by counsel are limited 'to evidence in the record and to such fair inferences as may be drawn therefrom.'"[96]

### 2. Additional Pertinent Facts

Prior to closing arguments, trial defense counsel indicated in an Article 39(a) session that he wished to refer to LCpl Jane's interactions with LCpl Hotel as "witness tampering" during his closing argument.[97] The Government objected. Appellant argued that witness tampering was a reasonable inference given the deletion of the Snapchat messages and LCpl Jane's violation of the military judge's order. The military judge found that while inappropriate conversations in violation of his instructions had taken place, there was no direct evidence of witness tampering. The military judge ruled that Appellant could raise the specter of witness tampering by allowing Appellant to "assert that there was a witness who was tainted."[98] Appellant could also pose the question about whether "witness tampering" occurred "as long as there [was] a very clear question mark at the end of that sentence," but could not "assert [witness tampering] as a conclusion."[99]

During closing argument, the Defense was allowed to posit to the members questions regarding why LCpl Jane would delete her messages, why LCpl Jane would speak to a defense witness in violation of the military judge's instructions, and asked the members to consider "what she is trying to hide."[100] The Defense also argued that because of LCpl Jane's "knowing violation," the members did not get to hear from LCpl Hotel.[101] The Defense suggested to the members that these actions were the result of LCpl Jane believing that the accusations against Appellant were not true.

---

[96] *United States v. Robles-Ramos,* 47 M.J. 474, 476-77 (C.A.A.F. 1998) (quoting *United States v. White,* 36 M.J. 306, 308 (C.M.A. 1993)).

[97] R. at 1103-04.

[98] R. at 1107-08.

[99] R. at 1108.

[100] R. at 1161-62.

[101] R. at 1162.

*3. Analysis*

Accused have a constitutional right to present argument through counsel before deliberation on findings at a court-martial.[102] Closing arguments may include comment regarding "testimony, conduct, motives, interests, and biases of witnesses to the extent supported by the evidence."[103] However, this right is not absolute. A military judge may place appropriate limits on closing argument so long as their actions "prevent unnecessary waste of time," "promote the ascertainment of truth," and "avoid undue interference with the parties' presentations or the appearance of partiality."[104] "The parties are entitled to a reasonable opportunity to properly present and support their contentions on any relevant matter."[105]

In this case, the military judge permitted defense counsel to raise the issue of witness tampering by inference only – allowing defense counsel to suggest that tampering may have occurred so long as there was a clear "question mark" at the end of the inference. The military judge's decision was predicated on his finding that, while his order was violated by inappropriate conversations, the Defense presented no direct evidence that witness tampering occurred. Based on our review of the record, we find this decision was supported by the record. And we do not find that that military judge erred by his decision to limit the Defense to make arguments supported by "evidence in the record and … such fair inferences as may be drawn therefrom."[106] Under the totality of the circumstances, considering the leeway provided to the Defense in cross-examination and closing argument, the military judge's actions were not an abuse of his discretion.

## D. The Military Judge Did Not Err by Failing to Provide an Instruction on Mistake of Fact as to Consent

*1. Standard of Review and the Law*

Whether a military judge properly instructed a panel is an issue of law that this Court reviews de novo. A military judge must provide instruction on any

---

[102] *See* R.C.M. 919(a).

[103] R.C.M. 919 discussion.

[104] R.C.M. 801(a)(3) discussion.

[105] R.C.M. 801(a)(3) discussion.

[106] *Robles-Ramos*, 47 M.J. at 476-77 (quoting *United States v. White*, 36 M.J. 306, 308 (C.M.A. 1993)).

affirmative or "special" defenses that are "in issue" in a case.[107] A matter is put into issue when "some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose."[108] This is a relatively low standard, which does not require that the evidence raising an issue be compelling,[109] and "any doubt about whether an instruction should be given should be resolved in favor of the accused."[110]

Mistake of fact as to consent is an affirmative defense to the offense of sexual assault without consent—the offense of which Appellant was ultimately convicted. The affirmative defense relieves an accused of criminal liability if the accused who, "as a result of ignorance or mistake," held "an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense."[111] The offense of sexual assault without consent is a general intent offense. As this Court identified in *Norton*, where an appellant was convicted of a general intent crime, the mistake of fact "must have existed in the mind of the accused and must have been reasonable under all of the circumstances."[112] Reasonableness under all of the circumstances requires that "some evidence must show that Appellant's mistake of fact was not only reasonable, but that Appellant did in fact honestly infer consent based on the circumstances."[113] The second element is not self-proving. Indeed, our superior court has found that evidence can exist to meet the first prong of objective reasonableness, but that same evidence does not necessarily offer insight into an appellant's subjective inferences related to consent.[114]

### 2. Analysis

During an Article 39(a) session held before the military judge provided findings instructions to the members, the military judge heard argument on the

---

[107] R.C.M. 916.

[108] R.C.M. 920(e) discussion.

[109] *United States v. Barnes*, 39 M.J. 230, 232 (C.A.A.F. 1994) (citation and internal quotation omitted).

[110] *United States v. Hibbard*, 58 M.J. 71, 73 (C.A.A.F. 2003).

[111] R.C.M. 916(j)(1).

[112] *United States v. Norton*, No. 202000046, 2021 CCA LEXIS 375, at *8 (N-M Ct. Crim. App. July 29, 2021) (citing R.C.M. 916(j)(1)).

[113] *Norton*, 2021 CCA LEXIS 375, at *8 (citing *United States v. Jones*, 49 M.J. 85, 91 (C.A.A.F. 1998)) (cleaned up).

[114] *See, e.g., United States v. Willis*, 41 M.J. 435, 438 (C.A.A.F. 1995).

Defense's proposed mistake of fact instruction. The Government, relying on this Court's decision in *Norton*, argued that there was no evidence that, at the time of the offense, Appellant was under a mistaken belief that LCpl Jane consented. The Government argued that it was not enough to put mistake of fact in issue that LCpl Jane and Appellant had kissed on previous occasions. The Defense argued that, unlike in *Norton* where the victim and the appellant had previously dated and then ended their relationship, here the preexisting relationship was on-going. Therefore, there was some evidence of consent. Defense counsel argued:

> There exists [evidence] that…those acts…were consensual. And so, to not allow the mistake of fact instruction would be to assume that in that moment, [Appellant] believed that consensual acts were actually unconsensual, and that he did not mistake that they were consensual…It seems to be a paradox that is…essentially creating a criminal mens rea in a situation where there is not actually a crime committed because of the consent instruction.[115]

The military judge reasoned that, "as a first initial matter, there is no evidence before the Court as to the subjective state of mind of the accused at the time of the offense suggesting that he was under the impression that he believed that [LCpl Jane] was consenting."[116] After reviewing this Court's decision in *Norton*, the military judge denied the request for a mistake of fact instruction.

We find that the military judge's denial of the instruction was proper. This case is similar to both *Norton* and *United States v. Jones*, where the evidence provided "no insight as to whether the appellant honestly believed the victim was consenting."[117] Here, not only is the record devoid of any evidence or testimony sufficient to raise the issue that Appellant may have actually held the requisite honest and subjective belief, but the evidence tends to support the opposite conclusion. Appellant's statements on the matter are found in the recording of his pretext phone conversation with LCpl Jane and subsequent interview with law enforcement, neither of which weigh in favor of the mistake of fact instruction. We do not find any evidence that Appellant indicated he

---

[115] R. at 1097.

[116] R. at 1096,

[117] *Norton*, 2021 CCA LEXIS 375, at *9 (citations and internal quotation omitted).

held a subjective mistaken belief as to consent contained in either conversation. In fact, Appellant made statements which indicated he believed that LCpl Jane was unable to consent to sexual activity because she was asleep.

Even if we were to assume that some evidence existed to put the mistake of fact defense in issue, we are convinced that any instructional error was harmless beyond a reasonable doubt. "A constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."[118] After careful review of the record and the evidence presented at trial, we are convinced beyond a reasonable doubt that, had the mistake of fact instruction been given, the members would have reached the same outcome.

## E. Cumulative Error

### 1. Standard of Review and the Law

We review claims of cumulative error de novo.[119] Under the doctrine of cumulative error, the existence of errors—none of which merit reversal individually—in combination merit the disapproval of a finding or sentence.[120] Errors asserted that are without merit are, plainly, insufficient to invoke the doctrine.[121] Reversal under the cumulative error doctrine is the remedy only when a court determines that the cumulative errors denied an appellant a fair trial.[122] "[A]ppellate courts are far less likely to find cumulative error where the record contains overwhelming evidence of a defendant's guilt."[123]

### 2. Analysis

The doctrine of cumulative error allows this Court to reverse a conviction even if errors do not merit reversal individually.[124] After careful review, we find no errors occurred in this case that are prejudicial, either alone or in the

---

[118] *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002).

[119] *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011).

[120] *See Pope*, 69 M.J. at 335.

[121] *See United States v. Gray*, 51 M.J. 1, 61 (C.A.A.F. 1999).

[122] *Pope*, 69 M.J. at 335.

[123] *United States v. Flores*, 69 M.J. 366, 373 (C.A.A.F. 2011).

[124] *United States v. Dominguez*, 81 M.J. 800, 822-23 (N-M. Ct. Crim. App. 2021) (*citing United States v. Banks* 36 M.J. 150 (C.A.A.F. 1992)).

aggregate. Appellant received a fair trial. This assignment of error is therefore without merit.[125]

## F. Legal and Factual Sufficiency

### 1. Standard of Review and the Law

Appellant argues that the evidence presented at his court-martial is legally and factually insufficient to support his convictions. We review questions of legal and factual sufficiency de novo.[126] To determine legal sufficiency, we examine whether, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[127] In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution."[128]

In evaluating factual sufficiency, we determine whether, after weighing the evidence in the record of trial and making allowances for not having observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt.[129] In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."[130] Proof beyond a "[r]easonable doubt, however, does not mean the evidence must be free from conflict."[131]

### 2. Analysis

To prove the first specification of sexual assault, the Government had to prove beyond a reasonable doubt that (1) Appellant committed a sexual act upon LCpl Jane by penetrating her vulva with his penis and (2) Appellant did

---

[125] *See United States v. Tapp*, 83 M.J. 600, 624 (N-M Ct. Crim. App. 2023).

[126] Article 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[127] *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987).

[128] *United States v. Guttierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (cleaned up).

[129] *Turner*, 25 M.J. at 325.

[130] *Washington*, 57 M.J. at 399.

[131] *United States v. Rankin*, 63 M.J. 552, 557 (N-M Ct. Crim. App. 2006).

so without the consent of LCpl Jane.[132] To prove the second Specification of sexual assault, the Government had to prove beyond a reasonable doubt that (1) Appellant committed a sexual act upon LCpl Jane by penetrating her vulva with his hand and (2) Appellant did so without the consent of LCpl Jane.[133]

The evidence of Appellant's guilt in this case—including LCpl Jane's testimony, admissions made by Appellant during his pretext phone conversation with LCpl Jane, and the admissions made by Appellant to law enforcement—is overwhelming. Appellant made several admissions, all of which were corroborated by LCpl Jane's testimony, including: that he penetrated her vagina with his penis, that he acted while believing that LCpl Jane could not consent, that he tried to wake LCpl Jane before he penetrated her vulva, that he felt her vagina with his hand, and that LCpl Jane was not responding during this time.

Considering this evidence in the light most favorable to the Government, we conclude that a reasonable fact-finder could have found all the essential elements of both Specifications of the offense beyond a reasonable doubt. The evidence is legally sufficient to support the conviction. Regarding factual sufficiency, after weighing the evidence before us and making allowances for not having personally observed the trial, we are similarly convinced of Appellant's guilt beyond a reasonable doubt. The evidence is thus factually sufficient to support the conviction.

---

[132] Article 120, UCMJ.

[133] Article 120, UCMJ.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[134]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[134] Articles 59 & 66, UCMJ.